# Richmond

NORFOLK COUNTY WATER COMPANY v. JOHN C. WOOD
AND
NORFOLK COUNTY WATER COMPANY v. WM. E. WOOD.

March 12, 1914.

Absent, Cardwell. J.

1.  EMINENT DOMAIN—*Necessity for Public Use—What Constitutes.*—
Before a company can exercise the power of eminent domain
the general public must have a definite and fixed use of the
property to be condemned, a use independent of the private
person or private corporation, in whom the title of the prop-
erty, when condemned, will be vested—a public use which can-
not be defeated by such private owner, but which public use
continues to be guarded and controlled by the general public
through laws passed by the legislature. The general public
must have the right to a certain definite use of the private
property on terms and for charges fixed by law, and the owner
of the property must be compelled to permit the general public
to enjoy it. The public must have a legal right to the use of
the property which cannot be gainsaid, denied or withdrawn
by the owner. The charter under consideration falls far short
of these requisites.

2.  EMINENT DOMAIN—*Public Use—Legislative Declaration.*—Because
the legislature has assumed to grant the right of eminent do-
main, and the grant has been accepted, it does not follow that
the grantee is a public service corporation. The legislature
cannot make a use public by declaring it to be such. The ques-
tion at law is whether the declared uses are in law public
uses, and that is a question which the courts must determine.

3.  EMINENT DOMAIN—*Charter Powers and Duties—Course of
Action.*—The status of a company as a public service corpora-
tion with the power of eminent domain, must be determined
not by what it actually does, or intends to do, but by what its
charter prescribes it must do by way of public duty. The char-

ter of the company, not its acts, must determine its status as a public service corporation.

4. Eminent Domain—*Water Companies—General Statutes.*—The general statutes of the State do not confer the right of eminent domain upon water companies only authorized by their charters to do a private business.   They apply to corporations chartered for the public use and benefit.   When "water supply companies" were included in the meaning of the term "public service corporations" only such companies were intended as had charters which clearly made them public service corporations.

Error to judgments of the Circuit Court of Princess Anne county in condemnation proceedings.   Judgment for defendant in each case.   Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Pender & Way,* for the plaintiff in error.

*Robert W. Tomlin,* for the defendant in error.

Harrison, J., delivered the opinion of the court.

These cases are before us upon a writ of error to an order of the circuit court, denying the right of the plaintiff in error to have commissioners appointed to condemn the land of either of the defendants in error, and dismissing the proceeding instituted by it for that purpose in each case.

The subject matter of the two cases being precisely the same, and the evidence the same in each, they are by agreement of counsel heard and considered together here.

The defendants in error resisted these proceedings in condemnation in the circuit court on two grounds, which are relied on here:

(1)   That neither under the Constitution of this State nor the general laws thereof, nor the charter of the Norfolk County Water Company, can said water company condemn the property of these respondents;

(2)   That even if the foregoing objections did not exist, the said water company has already taken unlawful possession of the property sought to be condemned and must vacate the same and restore it to the owner in its former condition before it can take any steps to condemn the land involved.

The record does not show upon which of these grounds the circuit court rested its denial of the right to condemn, the final order in each case being silent on the subject. In the view we take of the matter it will only be necessary to consider the first ground relied on, which is, that the Norfolk County Water Company has no right under the Constitution or general laws of the State, nor under its charter, to condemn lands.

It appears from the record that the Norfolk County Water Company was chartered by the Circuit Court of Norfolk county in June, 1899, and that in January, 1900, an act was passed by the General Assembly ratifying and confirming this circuit court charter, and adding thereto the right in the company to condemn such lands as might be necessary for the building of its works, or any of them, the laying of its pipes or any of them, in the manner prescribed by the 46th chapter of the Code of 1887.

Before examining this charter to ascertain the rights and powers of the company thereunder, we will advert to the law that must control us in determining whether or not it contains the necessary requirements to make the company the proper depository of the sovereign power of the State, which permits the property of the citizen to be taken against his consent.

The question involved has been fully considered and

the law stated by this court in the case of *Fallsburg Company* v. *Alexander,* 101 Va. 98, 43 S. E. 192, 61 L. R. A. 129, 99 Am. St. Rep. 885. It is there held that before the company can exercise the power of eminent domain, "the general public must have a definite and fixed use of the property to be condemned, a use independent of the private person or private corporation in whom the title of the property when condemned will be vested: a public use which cannot be defeated by such private owner, but which public use continues to be guarded and controlled by the general public through laws passed by the legislature." It is further said. citing Randolph on Eminent Domain, that "the taking of private property for private purposes cannot be authorized even by legislative acts, and the fact that the use to which the property is intended to be put, or the structure intended to be built thereon, will tend incidentally to benefit the public is not sufficient to bring the case within the operation of the right of eminent domain, so long as the structures are to remain under private ownership and control, and no right to their use or to direct their management is conferred upon the public."

Citing *Board* v. *Van Hoesen* 87 Mich. 533, 49 N. W. 894, 14 L. R. A. 114, it is said, that "To justify the condemnation of lands for a private corporation, not only must the purpose be one in which the public has an interest, but the State must have a voice in the manner in which the public may avail itself of that use. . . . The use which the public is to have in such property must be fixed and definite. The general public must have a right to a certain definite use of the private property on terms and for charges fixed by law, and the owner of the property must be compelled to permit the general public to enjoy it . . . : The use is private so long as the land is to remain under private ownership and control. and no

right to its use, or to direct its management, is conferred upon the public.'' It is further said that ''The test whether a use is public or not is whether a public trust is imposed upon the property, whether the public has a legal right to its use, which cannot be gainsaid or denied or withdrawn by the owner.'' That ''Strictly speaking, private property can only be said to have been taken for public uses when it has been so appropriated that the public have certain well defined rights to that use secured, as the right to use the public highway, the public ferry, the railroad, and the like. But when it is so appropriated that the public have no right to its use secured, it is difficult to perceive how such an appropriation can be denominated a public use.''

The law pronounced in the *Fallsburg Case, supra,* is upheld and reaffirmed in *Miller* v. *Pulaski,* 109 Va. 137, 63 S. E. 880, 22 L. R. A. (N. S.) 552.

Bringing the charter of the Norfolk County Water Company to the test of these principles, we find that the purposes and objects of the company, as declared in the charter, are, to purchase and otherwise acquire real estate, the amount to be held at one time in the State of Virginia not to exceed five thousand acres. To bore wells and extract water therefrom, to take water from rivers, creeks or springs, to build cisterns, tanks, dams, and other means of creating a water supply. To erect, equip and operate a pumping plant or plants, stand pipe or stand pipes, reservior or reservoirs for the purposes of pumping water and storing the same. To lay and maintain pipe or pipes for conducting water and also to repair such pipe or pipes. To conduct water through such pipe or pipes, and sell the same to individuals or corporations at such rents as it may deem expedient, and to collect such rent or rents therefrom. To manufacture, purchase, and otherwise acquire, hold, own, mortgage,

pledge, sell, lease or let, assign and transfer, invest,
trade, deal in with goods, wares, merchandise, stock and
bonds of other corporations and other evidences of in-
debtedness and property of every class and description,
and shall have the right to vote on all shares of stock in
other companies or corporations the same as an actual
person, also to collect dividends on stocks and interest
on bonds the same as an actual person.   To have the
right to borrow money in such amounts and at such times
as to it may seem expedient, and may also issue bonds
and secure the same by mortgage or other lien upon its
property of every kind and description, and upon its
franchise.   To pay for labor, work or material in stock
or bonds as it may deem expedient.   To make and enter
into contracts of every sort and kind with any individual,
firm, association, corporate, private, public or municipal.
The said company is authorized to contract and agree
with the owner of any land for the convenient location
of any of its works, or the location of any of its pipes in
Norfolk or Princess Anne counties, and in case of a dis-
agreement, or if the owner thereof be a *femme covert,*
under age, *non compos mentis,* out of the State, or un-
known, the said company shall have the right to condemn
such lands as may be necessary for the building of its
works, or any of them, the laying of its pipes, or any of
them, in the manner prescribed by the forty-sixth chap-
ter of the Code of 1887.

Tried by what the authorities cited pronounce to be a
public service, it would be difficult to conceive of a char-
ter falling more entirely short of the requirements.
There is nothing to indicate that the power obtained un-
der it is to be employed directly for the public use.   Any
sort of manufactory may be set up under it, and the com-
pany is not obliged in any manner to carry it on for the
benefit of the locality, or of the State at large.   All of

its works, property and product are under its exclusive dominion to do with as it pleases. There is nothing mandatory in the act. The company is not bound to any service to the public at all. It can sell all of its water to one person; in short, it can "make and enter into contracts of every sort and kind with any individual, firm, association, corporation—private, public, or municipal." After condemning a supply of water and taking all the land it desired, it could use it all in its own manufacturing business. Under the charter, the private use of the property, sought to be condemned is dominant and the public use, if any, merely incidental. Any use of the property by the public may be gainsaid, denied or withdrawn by the company at its will and pleasure. What was said in the *Fallsburg Case* with respect to the charter there under consideration, can be said with equal propriety of the present charter. "The difficulty with the charter is that the purpose for which the property is authorized to be taken by the right of eminent domain in this instance does not clearly appear to be for a public use or a public purpose. On the contrary, the grounds of public benefit upon which the taking is proposed are vague, and the use which the public is to have of the property, or the manner in which the public is to be benefitted by the use of it by the company is by no means fixed and definite. Not only is the public benefit to spring from the use to which the company proposes to devote the property vague, indefinite and uncertain, but under the plain language of the charter, the public use of the property or any use of it by the public may be gainsaid or denied or withdrawn by the company at its will, since it is authorized to use, not only a part, but the entire product or works it proposes to establish, for its own use or benefit. In such a case the private benefit too clearly dominates the public interest to find constitu-

tional authority for the exercise of the power of eminent domain, and is the equivalent of taking private property for a private use, against the will of the owner, which cannot be done in any case.''

Because the legislature has assumed to grant the right of eminent domain, and the grant has been accepted, it does not follow that the plaintiff in error is a public service corporation. The legislature cannot make a use public by declaring it to be such. The question at last is whether the declared uses are in law public uses, and that is a question which the courts must determine. *Miller* v. *Pulaski,* 109 Va. 137, 63 S. E. 880, 22 L. R. A. (N. S.) 552.

It is argued that the Norfolk County Water Company has never done anything but a public service, has never used its water supply for its own or any other private purpose, but has devoted the whole to the use of the public generally. The status of a company as a public service corporation, with the power of condemnation, must be determined not by what it actually does, or intends to do, but by what its charter prescribes it must do by way of public duty. If the use the company has been making and intends to make of its property is to determine its right to exercise the power of eminent domain, then no grant of power at all from the legislature would be necessary. The claimant would only have to set up his past dealings with his property and avow his good intentions for the future, to entitle him to take his neighbor's property against his will. Such a view is obviously inadmissible. A like contention was made in the *Fallsburg Case,* but the answer was that the charter itself, not the company's business, must be looked to, and that the mere *fiat* of the legislature would not make a purpose public which was in itself private.

The general laws of the State do not, as contended,

confer upon the plaintiff in error the right to condemn property. In support of this contention the plaintiff in error relies upon section 1294-a of the Code of 1904, which includes water supply companies within the meaning of the term "Public Service Corporation:" and upon clause 17 of section 1294-b, which provides that "every public service corporation heretofore or hereafter incorporated and authorized to construct, maintain, or operate, in this State, any work or works of public service, etc., shall be governed by the provisions of this chapter, and of an act concerning corporations, which became a law May 21, 1903, and upon clause 2, paragraph "f" of section 1105-c, which bestows upon each public service corporation the power to condemn property for its purposes and uses. We find in these statutes no support for the contention that they confer upon a water supply company, that is only authorized by its charter to do a private business, the right to exercise the great power of eminent domain. The statutes mentioned have reference to public service corporations, as to which there is no question that they are chartered for the public use and benefit, not to a company whose charter shows on its face that the business to be conducted is private and solely for the benefit of the individuals composing the company conducting the business. When "water supply companies" were included in the meaning of the term "public service corporation" only such companies were intended as had charters which clearly made them public service corporations.

In further support of the contention that all water supply companies are by the statutes made public service corporations with the right to condemn property, the plaintiff in error relies upon the following language from the opinion of this court in the case of *Jeter* v. *Vinton-Roanoke Water Co.*, 114 Va. 769, 780, 76 S. E. 921,

926. That not only does the Vinton Company's charter confer on it the right of condemnation for certain purposes, but "all public service corporations have that right under the general law, and by section 1294-a, clause 1, Code of 1904, concerning public service corporations, water supply companies are made public service corporations, and all municipal corporations and public institutions owned or controlled by the State are expressly excluded."

This language of the court was used in a case where no question was raised as to the power of the company to acquire by condemnation property for use in supplying the town of Vinton and the inhabitants thereof with water. The company had the right under its charter to furnish water to the town of Vinton, and to such persons, partnerships and corporations residing and doing business therein, and in the neighborhood thereof as might desire to use the same, and the sole question involved was the extent of the territory the company had the right to cover in supplying water under the language, "in the neighborhood thereof." The court was not passing upon a charter where the incorporators were charged with no duty to render the public any service, and it was not intended that the utterance mentioned should be taken in the comprehensive sense assigned to it. The language of the court must be read in the light of the facts dealt with. The court did not mean that *all* water supply companies, without regard to their natures, whether private or public, were made public service corporations by the statute, but it meant that all water supply companies having valid charters imposing upon them the duty to supply the public with water were made public service corporations, and that all such public service corporations had the right of condemnation. No other construction of the act cited by the court is

possible when it is read with the other acts applying to water companies.

Having reached the conclusion that the Norfolk County Water Company has no power to condemn the lands involved in this controversy, it is unnecessary to consider the second ground of defense relied on by the defendants in error.

The judgments complained of must be affirmed.

*Affirmed.*