## Richmond.

## WILSON'S ADMINISTRATRIX V. VIRGINIA PORTLAND RAILWAY COMPANY.

### November 22, 1917.

1. MASTER AND SERVANT — *Contributory Negligence — Railroad Tracks.*—Plaintiff's intestate was struck and killed by a moving car on the yards of defendant railroad company. Intestate was standing on a track looking intently at the fireman on an engine on another track about eight feet from the track on which he was standing, when he was struck by an empty flat-car, which, without his knowledge, had just previously been cut loose from the engine and shunted into the track on which he was standing, by an operation familiarly known as a flying switch. The fireman and others attempted to warn him of his danger, but he did not seem to understand, and all the witnesses who testified stated that although he was plainly in imminent danger, he was obviously unconscious of it until it was too late for him to save himself. He was familiar with the yard and its operation, and knew that it was a common practice to make flying switches.

   *Held:* That, if the evidence had ended here, defendant's demurrer to the evidence would have been sustained, as plaintiff's intestate was plainly guilty of contributory negligence.

2. MASTER AND SERVANT—*Injury to Servant on Railroad Track—Last Clear Chance Doctrine.*—But in the instant case the jury might have found from the evidence, which was conflicting, that the brakeman in control of the car which struck decedent, saw decedent in time to stop the car, that decedent's attitude plainly indicated that he was unconscious of his danger and would be struck unless the car was stopped before it reached him, and that the brakeman's failure to do what a reasonably prudent man would have done under the circumstances was the proximate cause of the accident. Accordingly, the demurrer to the evidence ought to have been overruled.

3. NEGLIGENCE—*Last Clear Chance Doctrine—Lapse of Time.*—The doctrine of last clear chance is not based upon any contractual relationship, but has its foundation in humanity and natural justice. The immediate circumstances of the accident in this

case transpired in a very short space of time, but this is true in most cases of accidental injury, and lapse of time, provided it is appreciable, is not usually material. The lapse of time in the instant case was, according to plaintiff's witnesses, appreciable, and the evidence is not such as to bring it within the influence of the *White Case,* 117 Va. 342, 84 S. E. 646, and the *Shiflett Case,* 118 Va. 70, 86 S. E. 860.

4. NEGLIGENCE—*Last Clear Chance Doctrine—Duty of Prevision.*— In the instant case, there probably was not any duty of prevision on the part of the defendant, but this fact is immaterial since it affirmatively appears here that the brakeman, as the car entered the switch, actually saw defendant in a position and under circumstances sufficient to charge him with knowledge that "the man on the track paid no heed to his danger and would take no step to secure his own safety."

5. EXPERT AND OPINION EVIDENCE—*Yard Brakeman.*—Testimony as to the distance within which a car could be stopped by one who had had thirteen years' experience as yard brakeman, and who was furnished full information as to the size and character of the car, the rate of speed at which it was running, the condition of the brakes and the grade of the track, is not without probative value. Such evidence is usual and appropriate for the purpose for which it was introduced.

6. NEGLIGENCE—*Last Clear Chance Doctrine.*—The last clear chance doctrine presupposes the negligence of the party injured.

7. NEGLIGENCE—*Last Clear Chance Doctrine—Knowledge of Danger.*—If one struck and killed by a railroad car saw the car in time to get out of the way, there could be no recovery by his administratrix, since the case would then lack the essential element of his unconsciousness of the danger, and his own negligence would bar the recovery. In that event the administratrix could not do more than make out a case of concurring negligence.

8. NEGLIGENCE—*Last Clear Chance—Knowledge of Danger—Evidence—Statement of Deceased—Questions for Jury.*—Deceased after being struck by a car said that he saw the car coming. *Held:* That, this statement did not preclude deceased's administratrix from recovering damages for his death under the last clear chance doctrine. Plaintiff concedes that deceased saw the car after it was practically on him, but several of the witnesses stated that he never looked in the direction of the approaching car until it was too late for him to escape. In this state of the evidence, the jury would not have necessarily believed that he meant to say that he saw the car in time to get off the track.

21

9. Fellow Servants—*Abolition of Rule as to Railroad Company—What is a Railroad Company.*—A company chartered by the General Assembly as a railway corporation by a special act, but operated exclusively in connection with another corporation, a cement company, for the private purposes of the latter, both corporations being under one common ownership and control, its engines being propelled by steam, and doing regularly the sort of work which imparts peculiar hazard to the business of railroads, is a railroad company within the provisions of section 162, Constitution of 1902, section 1294-k, Code of 1904, abolishing the fellow-servant doctrine.

Error to a judgment of the Circuit Court of Augusta county, in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Curry & Curry* and *Timberlake & Nelson,* for the plaintiff in error.

*A. C. Gordon* and *D. Lawrence Groner,* for the defendant in error.

Kelly, J., delivered the opinion of the court.

William T. Wilson was struck and killed by a moving car on the yards of the Virginia Portland Railway Company, at Fordwick, in Augusta county, Virginia, and this suit was brought by his administratrix to recover damages from the railway company on account of his death. A demurrer to the evidence, interposed by the defendant, was sustained by the trial court, and the plaintiff brings the case here upon a writ of error.

The evidence, taken as a whole, presents a sharp conflict upon the vital points, but viewing it, as we must, most favorably for the plaintiff, it tends materially to establish the following facts:

The defendant railway company was chartered by the General Assembly as a railway corporation by a special act in 1901 (Acts extra session 1901, chapter 296), but is now and has always been operated exclusively in connection with another corporation ·called the Virginia Portland Cement Company, and for the private purposes of the latter.· Both corporations were under one common ownership and control. The employees of each were hired and paid by the same common authority, and the accounts for their wages distributed upon the books of the cement company according to the actual time of service rendered for each by the employees.

Wilson had been working for the cement company as sack-house foreman for some years. On the day of the accident which resulted in his death, he was directed to take his men from the sack house and do some work on the nearby tracks and yard of the railway. Shortly after going to this work, he left his place and going north crossed a track upon which an engine was backing towards him from the east. His purpose in doing this was to reach the fireman's side of the engine so that he might hand the latter some sort of a church subscription paper which had no relation whatever to the work of either corporation. As the engine passed he handed this paper to the fireman and then almost immediately ·stepped back and took his stand on another track which was north of and about eight feet from the track on which the engine was moving. Wilson had not looked to the east as he stepped on the track and did not do so at all until just about the moment he was struck by an empty flat-car, which, without his knowledge, had just previously been cut loose from the engine and shunted into

the track on which he was standing, by an operation familiarly known as a flying switch. The wind was very high, and interfered to a considerable extent with his ability to hear the noise of the approaching car and the shouts of several co-employees who were trying to warn him. From the moment he stepped on the track until after it was too late for him to get out of the way, he was looking directly and intently at the fireman to whom he had delivered the paper. This fireman was warning him of his danger, but he did not seem to understand him, and all the witnesses who testified on the subject, several in number, stated that although he was plainly in imminent danger, he was obviously wholly unconscious of it until it was too late for him to save himself. It is a fair inference from the evidence that he was looking for some indication from the fireman as to his attitude toward the contents of the paper. At any rate he did not seem to know the car was coming and it was apparent to every observer that his attention was intently fixed in another direction. He was, however, thoroughly familiar with the yard and its operation, and he knew that it was a common practice there to make flying switches.

If the evidence ended here, we would have no difficulty whatever in sustaining the demurrer. Wilson was himself plainly guilty of negligence in going and remaining upon the track without looking to his own safety; but upon the whole case we are constrained to decide that his administratrix is entitled to recover upon the doctrine of the last clear chance.

There was a man at the brake on the rear end of the car, whose business it was to control its movement. He was in a position from which he could see Wilson from the time the car entered the switch leading to the track upon which the latter was standing. This man admits that he saw Wilson when the car reached the frog of the switch. The distance from the frog to the point of the accident was shown to be

about eighty feet, and there was evidence tending to show that the car could have been stopped in less than one-fourth of that distance. Without going into the particulars of the evidence, which is in irreconcilable conflict, it is sufficient to say that the jury might have found, by accepting that which was favorable to the plaintiff and rejecting that which was unfavorable, that the brakeman saw Wilson in time to stop the car, that Wilson's attitude plainly indicated that he was unconscious of his danger and would be struck unless the car was stopped before it reached him, and that the brakeman's failure to do what a reasonably prudent man would have done under the circumstances was the proximate cause of the accident. This being true, the demurrer to the evidence ought to have been overruled.

We have reached this conclusion only after the most painstaking consideration of the record. The evidence, when viewed in its entirety, brings the case very near the border line between liability and non-liability. There is much in it from the standpoint of the defendant to make the judgment appear a hardship. It may be that if we were permitted to weigh the evidence, we would find for the defendant; and, for that matter, it may be that but for the demurrer the jury would have so found. However that may be, the jury might have found the facts to have been as above outlined, and upon such facts we are unable to differentiate the case in principle from the long line of decisions in this State sustaining recoveries under the rule of the last clear chance. This rule is not based upon any contractual relationship, but has its foundation in humanity and natural justice. The immediate circumstances of the accident in this case transpired in a very short space of time, but, as was said by this court in the *Crocker Case*, 117 Va. 327, 341, 84 S. E. 681, 686, "this is true in most cases of accidental injury, and lapse of time, provided it is appreciable, is not usually material." The lapse of time in

the instant case was, according to plaintiff's witnesses, appreciable, and the evidence is not such as to bring it within the influence of the *White Case,* 117 Va. 342, 84 S. E. 646, and the *Shiflett Case,* 118 Va. 70, 86 S. E. 860.

The latest expression by this court upon the doctrine of the last clear chance is found in Judge Whittle's opinion in *Kabler's Adm'r* v. *Southern Ry. Co.,* 121 Va. 90, 92 S. E. 815, containing a comprehensive review of the leading Virginia cases on the subject. The rule of liability, as reiterated in the *Kabler Case,* clearly applies to this one. It is true that in the instant case there probably was not, as there was in the case cited, any duty of prevision on the part of the defendant, but this fact is immaterial since it affirmatively appears here that the brakeman, as the car entered the switch, actually saw Wilson in a position and under circumstances sufficient to charge him with knowledge that "the man on the track paid no heed to his danger and would take no step to secure his own safety."

We have not overlooked the fact that the brakeman says he did all he could to stop the car after he discovered the peril in which Wilson had placed himself; but, in view of the distance traversed by the car before it struck him as well as before it actually stopped, the rate of speed at which it was moving, the satisfactory condition of the brakes, and the distance within which the car could probably have been stopped, to say nothing of certain other discrediting features of his testimony, the jury would not have been bound to accept this statement. There was evidence upon which the jury might have found that this man saw Wilson's peril when eighty feet from him, and did not begin to set the brake until he was within ten feet of him.

We have carefully regarded also the contention that there was no sufficient evidence to show that the car could have been stopped between the frog of the switch and the point of the accident. The plaintiff's testimony upon this question,

showing that the car could have been stopped within fifteen, or at most thirty, feet, was given by a colored man who for thirteen years had been the yard brakeman for the Chesapeake and Ohio Railway Company at Staunton. He was furnished full information as to the size and character of the car, the rate of speed at which it was running, the condition of the brakes and the grade of the track, and his testimony was based upon this information. No objection was offered to his evidence upon any ground, and the contention that it was without probative value cannot be sustained. Upon the contrary, such evidence is usual and appropriate for the purpose for which it was here introduced. *Wise Terminal Co.* v. *McCormick,* 107 Va. 376, 378, 58 S. E. 584. Furthermore, the fireman, who was the defendant's witness, testified that if the car was moving at four miles an hour (the speed indicated by some of the witnesses), it could have been stopped within forty or fifty feet, which was thirty or forty feet less than it ran after the brakeman must have seen Wilson's danger.

Reliance is placed by the defendant upon two statements which certain witnesses said Wilson made after the accident. One of these statements was that "he didn't know what had made him so careless." This, of course, is immaterial. The theory upon which the plaintiff seeks to recover presupposes the negligence of the decedent. The other statement is of more consequence. The fireman, to whom Wilson had given the paper, testified to the following conversation with him:

"Q. Then" (just after the accident) "where did you take him? A. To the doctor's office. Q. Did you have any conversation with him? A. Yes, sir. Q. Tell the conversation? A. The doctor walked out into a drug room, and I said, 'Mr. Wilson, I did all I could to save you, I motioned you to get out of the way,' and he said, 'Yes, you motioned your hand to get out of the way, and I don't know what I was think-

ing about, and I saw that car coming.' I said, 'Yes, I did all I could,' and about that time the doctor came in and I didn't talk any more to him."

The material point in this statement is that Wilson said he saw the car coming. If he saw the car in time to get out of the way, there could be no recovery by his administratrix, since the case would then lack the essential element of his unconsciousness of the danger, and his own negligence would bar the recovery. In that event the administratrix could not do more than make out a case of concurring negligence. His statement, however, does not go far enough to produce this result. It does not fix the point or the time at which he saw the car. The plaintiff concedes that Wilson saw the car after it was practically on him, and several of the witnesses state that he never looked in the direction of the approaching car until it was too late for him to escape. In this state of the evidence, the jury could not have necessarily believed that he meant to say that he saw the car in time to get off. Indeed, they could not have attached the latter meaning to the statement without disregarding the clear weight of the testimony of those who saw the accident. If the statement was correctly understood and accurately repeated by the one witness who claimed to have heard it, we must give it as favorable interpretation on behalf of the plaintiff as the jury might have given it, in the light of all the other pertinent testimony in the case, and with due regard for the fact that it was made at a time when the declarant had just received a fatal shock and injury, and was undergoing the most intense physical suffering.

But it is urged that Wilson and the brakeman were fellow-servants, and that there can be no recovery by the plaintiff because the defendant was not such a "railroad company" as to bring it within the provisions of section 162 of the Constitution (Code 1904, page 259), and section

1294-k of the Code, abolishing the fellow-servant doctrine. We cannot accede to this view. The defendant was operating under a railroad charter, its engines were propelled by steam, it was doing regularly, and in this very case, the sort of work which imparts peculiar hazard to the business of railroads. It possessed the powers and was subject to the duties of all other railroad companies chartered by and operating in this State. So far as the record discloses, it was doing no public business, but that was a question between it and the public. Its charter fixed its status as a corporation *Norfolk County Water Co.* v. *Wood,* 116 Va. 142, 81 S. E. 19; and the character of the work it was carrying on brings it directly within the purpose which the lawmakers had in view when they abolished the fellow-servant doctrine as to railroad employees. The case of *Norfolk Traction Co.* v. *Ellington,* 108 Va. 245, 61 S. E. 779, 17 L. R. A. (N. S.) 117, invoked and relied upon by the defendant, is sufficient authority for the latter proposition.

For the reasons above stated, the judgment complained of must be reversed, and this court will overrule the demurrer to the evidence and enter a judgment in favor of the plaintiff for the amount of damages fixed by the verdict of the jury.

PRENTIS and BURKS, JJ., being of opinion that under the evidence the doctrine of last clear chance does not apply, dissent.

*Reversed.*