## Wytheville.

## PENNSYLVANIA RAILROAD COMPANY V. JENKINS.

### June 13, 1918.

### Absent, Burks, J.

1. APPEAL AND ERROR—*Law of the Case.*—If there have been two appeals of a case, between the same parties, and the facts are similar, nothing decided on the first appeal can be re-examined on the second appeal.

2. CARRIERS OF PASSENGERS—*Contributory Negligence—Employe with Dead Engines—Case at Bar.*—Plaintiff was an employee of a locomotive works and was accompanying two dead locomotives, new engines, moving on their own wheels as freight, from Richmond, Virginia, to Chicago, Illinois, the two dead engines forming parts of a long through freight train. Upon a stoppage of the freight train, plaintiff hurriedly alighted from his engine immediately next to one of the main line passenger tracks of the company, upon which from his knowledge and experience of twenty years as a locomotive engineer he must have known that trains were likely to pass at any moment, and as to which danger he had been cautioned twice upon that very morning. Plaintiff was struck by a passenger train just as he stepped from his dead engine, or he was struck just before he straightened up, after making an examination of the engine for the purpose of discovering whether it would be necessary because of the hot boxes to take it out of the train. The physical facts showed that plaintiff could not have looked, because if he had he would have seen the rapidly approaching passenger train which injured him.

   *Held:* That plaintiff was guilty of such gross negligence that he could not recover.

3. NEGLIGENCE—*Contributory Negligence—Last Clear Chance—Case at Bar.*—In the instant case, an instruction upon the theory that the doctrine of discovered peril or the last clear chance might be applied by the jury was clearly erroneous, as appears from all of the accounts given of the accident by the plaintiff himself. It is manifest that if he was struck just as he stepped from his engine, there was no opportunity to save him from

the consequences of his own negligence. It is equally evident that while a part of his body was across the rail and his head under the engine, a large part, if not all, of his body must have been concealed by the overhang of the tender and freight cars from the engineer of the approaching train on the parallel track, and that when he suddenly got up from under the engine in front of the passenger train by which he was immediately struck there was then no possible chance to save him from the consequences of his own negligence.

Error to a judgment of the Hustings Court, Part II, of city of Richmond, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Eppa Hunton, Jr.*, and *Thos. B. Gay*, for the plaintiff in error.

*O'Flaherty & O'Flaherty*, for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

This case is before this court for the second time. *Pennsylvania Railroad Co.* v. *Jenkins*, 119 Va. 186, 89 S. E. 96. The opinion announced the well established doctrines, that the plaintiff, Jenkins, who was in charge of a dead engine composing part of a freight train, even though he was a passenger, was not relieved from the obligation to use ordinary care for his own safety, and that if his own negligence proximately contributed to his injury there could be no recovery. It was further determined that it was clear from the physical facts shown by the record that if the plaintiff had looked and listened, he would necessarily have known of the approach of the train which inflicted the injury complained of, and that his negligence was accentuated by his admission that he did

not look for and did not hear the approaching train. The first verdict was set aside and the judgment thereon in his favor was therefore reversed, and the case was remanded for a new trial, if the plaintiff should be so advised. Upon the second trial there was another verdict and judgment in favor of the plaintiff, to which this writ of error was allowed.

It is unnecessary to repeat the clear statement of facts appearing in the former opinion. They are substantially similar to the facts appearing upon the second trial now before us for review. This being true, the doctrine of the law of the case is applicable—that is, if there have been two appeals of a case, between the same parties, and the facts are similar, nothing decided on the first appeal can be re-examined on the second appeal. *Steinman* v. *Clinchfield Coal Corporation,* 121 Va. 611, 93 S. E. 684.

The only possible ground upon which it can be suggested that the facts are not substantially the same grows out of the variance in the testimony of the plaintiff himself on the two trials. Upon the first trial he said that he did not see the train which injured him, although it was a clear morning and the track was straight for a mile and a half. When asked whether he looked, he said: "Well, I can't say that I did; because if there had been a train I probably would have seen it; I don't know that I did look; I jumped right down and went under my engine. I was going right ahead." Upon the second trial, having first testified that he did look, he explains his inconsistency and contradiction by saying, that after thinking it over he remembers that he saw a large force of section hands thirty or forty feet south of the track upon which his dead engine was standing and east of that point in the direction from which the train that injured him came, and finally makes this answer: "I got to thinking over this thing. I had never been in court before; the last time I was here was the first time I was

ever in court in my life, and I tried to tell the facts just as near as I could, and I believed at the time I was making that statement it was so, but since then I recalled, and it has come to my mind that I did see—I could not possibly have seen those men unless I had turned east and looked at them." Then upon further cross-examination, upon being asked to explain why he told the jury on the former trial that if he had looked he would have seen the train, and then told the second jury that he did look and did not see it, he replies: "All I have got to say in answer to that question is this, that when I made that statement it was all right, and is true; that statement is all right; I do not go back on that at all. Q. It is true then? A. Yes, it is true, in part, as far as it goes; but I have thought over this matter, as well as other people think over things, and I have had a chance to think over and remember things that I did not remember at that time. There are lots of things that have happened in this case that I did not remember at that time that I have remembered since—lots of things."

When it is remembered that the record shows that seventeen days after the accident he stated in writing that he was struck by the train on the next track just as he stepped off of the dead engine; that on the first trial, the 5th day of February, 1915, about twenty-one months after the accident he testified that he did not look; and that on the second trial, on the 16th day of February, 1917, three years and nine months after the accident, he testified as is above recited, it becomes apparent that his memory as to the occurrence is unreliable. It is inexorably true, as he himself said upon the first trial, and as heretofore determined by this court, that the physical facts show that he could not have looked, because if he had he would have seen the rapidly approaching passenger train which injured him. The evidence demonstrates beyond a peradventure that he hurriedly alighted from his engine immediately next to one of

the main line passenger tracks of the company, upon which
from his knowledge and experience of twenty years as a
locomotive engineer he must have known that trains were
likely to pass at any moment, and as to which danger he
had been cautioned twice upon that very morning.

According to the testimony, the accident happened in one
of two ways: (a) either the plaintiff was struck by the pas-
senger train just as he stepped from his dead engine, as
stated by him in writing shortly after the accident; or (b)
he was struck just before he straightened up, after having
suddenly stepped from his engine, just as the freight train
stopped, and gone forward a few paces, then down on his
knees, with his head and a part of his body across the rail
under the dead engine, and looked upward for the purpose
of discovering whether it would be necessary because of
the hot boxes to take the dead engine out of the train, or
whether he could safely proceed with it upon his journey;
and that this happened in such a short time that he might
say that he was struck just as he got off of his engine.

In either view, he was guilty of such gross negligence
that he cannot recover.

The court, upon the second trial gave an instruction
upon the theory that the doctrine of discovered peril or the
last clear chance might be applied by the jury to this case.
This we think was clearly erroneous, as appears from all
of the accounts given of the accident by the plaintiff him-
self. It is manifest that if he was struck just as he stepped
from his engine, there was no opportunity to save him from
the consequences of his own negligence. It is equally evi-
dent that while a part of his body was across the rail and
his head under the engine, a large part, if not all, of his
body must have been concealed by the overhang of the ten-
der and freight cars from the engineer of the approaching
train on the parallel track, and that when he suddenly got
up from under the engine in front of the passenger train

by which he was immediately struck there was then no possible chance to save him from the consequences of his own negligence.

If authority is needed to support propositions so clear and well settled, it is sufficient to refer to *Berkley St. Ry. Co.* v. *Simpson,* 106 Va. 548, 56 S. E. 331; *N. & W. Ry. Co.* v. *Strickler,* 118 Va. 153, 86 S. E. 824; *Va. & S. W. Ry. Co.* v. *Skinner,* 119 Va. 846, 89 S. E. 887; *Southern Ry. Co.* v. *Mason,* 119 Va. 263, 89 S. E. 225.

Other legal questions arising under the instructions and the alleged variances between the allegations and the proof are raised, but in our view no good purpose would be served by discussing them.

The judgment will, therefore, be reversed and the case remanded to be further proceeded with according to law.

*Reversed.*