𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

GUNTER'S ADM'R V. SOUTHERN RAILWAY COMPANY.

January 22, 1920.

1. RAILROADS—*Injuries to Persons on or Near Tracks—Licensees.*—
Where a path between the rails of the track is the best
way to travel, and people had for many years, with the
knowledge of the railway company, constantly used this track
as a walkway at all hours of the day and night, a pedestrian
using the path is a licensee and not a trespasser.

2. RAILROADS—*Injuries on or Near Track—Negligence not Pre-
sumed.*—In an action for the death of a pedestrian on or near
a railroad track, the basis of recovery is the negligence of
the defendant railroad; that is, the breach of some duty im-
posed by law, common or statute. It is always incumbent
on the plaintiff to establish this, as it will never be pre-
sumed, and in its absence there can be no recovery.

3. CONTRIBUTORY NEGLIGENCE—*General Rule.*—After the defend-
ant's negligence has been established, if it be shown that the
plaintiff also was guilty of negligence which proximately
contributed to his injury, there cannot, as a general rule,
be any recovery, as the courts will not lend their aid to ap-
portion the injury between two wrongdoers.

4. LAST CLEAR CHANCE—*Statement of the Doctrine.*—As the con-
tributory negligence rule is a harsh one, and at times works
great hardship, the courts have felt compelled to qualify it,
or make an exception to it, independently of cases specially
provided for by statute, and to declare that, while the gen-
eral rule would be enforced in cases where the negligence
of both parties was concurrent and continuous down to the
time of the injury, they would not enforce it, but would al-
low a recovery in that class of cases where, although the
plaintiff had been negligent in the first instance and that
negligence had proximately contributed to his injury, there
was an appreciable interval of time between the plaintiff's
negligence and his injury, during which the defendant, by
the exercise of ordinary care, could and ought to have avoided
the effects of the plaintiff's prior negligence, but failed to do
so. This qualification is generally designated as the doctrine
of last clear chance.

5. LAST CLEAR CHANCE—*Trespassers—Licensees.*—The right to recover, under the last clear chance doctrine, is placed on the ground that "the defendant knows, or by the exercise of ordinary care ought to know, of the plaintiff's danger." The phrase, "or by the exercise of ordinary care ought to know," is applicable only to that class of cases where the plaintiff is a person to whom the defendant owes the duty of lookout. If the plaintiff is a mere trespasser, whom the defendant has no reason to expect to be on the track at that point, it is only after the discovery of his peril that the defendant owes him the duty to avoid injury to him by negligence or intention. The failure to discover a trespasser of this kind is not actionable negligence.

6. LAST CLEAR CHANCE—*Unconsciousness of Danger—Injuries on Railroad Track—Superadded Facts.*—Where the doctrine of last clear chance is applied, the plaintiff is always unconscious of his peril. But that is not sufficient to warrant recovery. The situation must have been such that those operating the train, in the exercise of ordinary care and prudence, were admonished of the fact that the plaintiff was apparently unconscious of his peril, and would take no steps to secure his own safety.

7. LAST CLEAR CHANCE—*Unconsciousness of Danger—Injuries on Railroad Track—Superadded Facts.*—In order to charge the defendant with liability, there must be, in addition to the presence of the person on the track, some other fact or circumstance, brought home to the knowledge of the defendant's servant operating the train, sufficient to put a reasonable man on his guard that the person on the track pays no heed to his peril, and will take no steps to insure his safety.

8. RAILROADS—*Injuries to Persons on or Near Track—Duty to Licensees.*—It is the duty of railroad employees to keep a lookout for licensees, and when discovered to be in peril, to do all in their power, consistent with their duty to others, to avoid inflicting an injury upon them. The very fact that a person is a licensee charges the employees of the company with the duty to look out for him, and the object of the outlook is to give warning of danger so as to avoid injury to him.

9. DEMURRER TO THE EVIDENCE—*Statement of Rule.*—Where defendant demurs to plaintiff's evidence, all the evidence for the plaintiff, and all inferences therefrom which a jury might fairly draw, must be accepted as true, and all of defendant's evidence in conflict therewith, and all the inferences from defendant's evidence (although not in conflict with plaintiff's evidence), which do not necessarily result therefrom, must be rejected.

10. LAST CLEAR CHANCE—*Injuries on or Near Railroad Track—Licensee—Case at Bar.*—In the instant case the engine-man was running a passenger train on down grade at the rate of fifty miles an hour. The steam was shut off, the train coasting and making very little noise. He first saw the deceased, a licensee, between the rails on the track when he was 500 yards away, and saw her continuously from that time until she was struck, and never at any time slackened his speed, blew his whistle, sounded his bell, or gave any other warning of the approach of his train, and neither she nor her companion either looked back or gave other evidence of consciousness of the approach of the train.

*Held:* That while the engine-man was under no obligation to stop his train or to slacken its speed, when the point· of peril was reached, and it was manifest that deceased would be killed unless she left the track quickly, he owed her the duty of warning of the approaching train. The very situation was an admonition to the engine-man of deceased's peril.

11. LAST CLEAR CHANCE—*Injuries on or Near Railroad Track—Duty of Engine-man.*—It matters not how an engine-man is admonished of the peril of a person on the track, if the admonition is such as that a reasonably prudent man would be put upon his guard that the person on the track is heedless of his danger and will take no steps to secure his own safety, it becomes the duty of the engine-man to do all he reasonably can to avoid injuring him. This rule is sometimes applied where there has been a failure to obey signals, sometimes where no signals at all have been given.

12. LAST CLEAR CHANCE—*Injuries on or Near Railroad Track—Duty of Engine-man to Licensee—Question for Jury.*—The duty imposed upon an engine-man, under the last clear chance doctrine, is to use ordinary care to *discover* the peril of a licensee, and, having discovered it, to use like care to avoid injuring him. The omission of either duty is actionable negligence, and if the evidence leaves it doubtful whether or not he did use such care, then the question is one for the jury.

13. LAST CLEAR CHANCE—*Injuries on or Near Railroad Track—Notice to Engine-man of Pedestrian's Unconsciousness of Danger—"Superadded Circumstances"—Case at Bar.*—In the instant case there were two persons on the track and three others so near their side that they could touch each other. The train was running at the rate of nearly seventy-five feet per second and making no noise. None of the five looked back or gave evidence of consciousness of the approaching train.

The very attitude of the parties, the failure of the five to give any indication of consciousness of danger, and the manifest and increasing peril of the deceased were "superadded circumstances" brought home to the engine-man's knowledge sufficient to put a reasonable man upon his guard that the deceased was totally ignorant of her peril and would take no steps to secure her safety.

14. LAST CLEAR CHANCE—*Injuries on or Near Railroad—Presumption That Pedestrian Will Change His Position—Duty of Engine-man.*—When the engine-man or other person in charge of a moving engine or car sees a person in apparent possession of his faculties on the track, or so near thereto that he will probably be injured or killed unless he changes his position, he has the right to assume that he will change his position in time for his own safety until the approach is so close that an engine-man of ordinary care and prudence would be admonished of his peril, and if he then gives no evidence of consciousness of his peril it is the duty of such engine-man or person in charge to give timely and suitable warning of the approach of such engine or car, and if the warning appears to be unheeded to use all other means within his power, consistent with his higher duty to other persons, to avoid injury to one who has thus exposed himself. The failure to exercise this degree of care by a servant operating such engine or car is negligence for which the master is liable.

15. LAST CLEAR CHANCE—*Injuries on or Near Railroad—Presumption That Pedestrian Will Change His Position—Duty of Engine-man—Duty to Licensee.*—If the person on or dangerously near the track is one to whom the duty of lookout is owing, and his injury or death results from a collision which would not have occurred if a proper lookout had been kept, and warning given by the servant operating the engine or car, then the master is liable.

16. LAST CLEAR CHANCE—*Injuries on or Near Railroad—Presumption That Pedestrian Will Change His Position—Duty of Engine-man—When Mere Warning Not Sufficient.*—If a person is on the track and in an apparently helpless condition, mere warning is not sufficient, because it would be useless; but the servants operating the engine or car must use all the means within their power, consistent with their higher duty to others, to avoid injuring him after discovering his perilous position, or if he be one to whom the duty of lookout is owing, after they should have discovered it.

17. LAST CLEAR CHANCE—*Injuries on or Near Railroad—Limits of the Doctrine.*—Persons walking on railroad tracks are not

excused by the last clear chance doctrine for inattention or for failure to keep a constant lookout in both directions for approaching trains; but if they have not done so and are discovered upon the track, and the engine-man can by signal warn them of the approaching danger and thereby obviate the consequences of their negligence, it is his duty to do so.

18. LAST CLEAR CHANCE—*Injuries on or Near Track—Duty of Engine-man—Case at Bar.*—In the instant case, under the circumstances related in the tenth syllabus, there was no need to stop the train or to slacken its speed, but it was necessary to give a warning signal, and to give it at such time, place, and manner as would have been effectual, if promptly heeded.

Error to a judgment of the Circuit Court of Pittsylvania county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Harry Wooding, Jr., J. R. Joyce* and *P. W Glidewell,* for the plaintiff in error.

*R. B. Tunstall* and *Withers, Brown & Leigh,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This is an action to recover for the death of Lena W. Gunter. After all the evidence had been introduced, the defendant demurred to the evidence, and the court sustained the demurrer and entered judgment for the defendant. To that judgment this writ of error was awarded.

Viewed from the standpoint of the demurrer to the evidence the case was as follows: On the 16th day of August, 1916, between nine and ten o'clock p. m., Lena W. Gunter, a young white woman, twenty-two years of age, was killed on the track of the Southern Railway Company at School-

72

field, Pittsylvania county, Virginia, by a northbound train of the Southern Railway Company.

Schoolfield is a cotton mill village of some five or six thousand inhabitants, located just south of the city of Danville, adjoining said city, and though not in the corporate limits, is a southern suburb of Danville.

[1] The tracks of the Southern Railway Company, consisting of a double track main line and a spur track, parallel thereto, run through the village of Schoolfield—practically through the middle of said village; while the streets of Schoolfield run at right angles to said railway tracks; some of said streets coming to an end at the railway tracks and some of said streets crossing said tracks. There are well defined paths along the railway tracks and the best path is in the center of the rails of the northbound track, leading from a point in the extreme southern end of Schoolfield all the way to and beyond the street on which Lena W. Gunter lived, called Stokesland avenue.

This path between the rails of the northbound track is the best way to travel, and people traveling on foot leave the road and walk along the railroad, mostly on this path between the rails of the northbound track; in fact, people are and have been for many years (ever since Schoolfield has been a village), with the knowledge of the railway company, constantly using this track as a walkway at all hours of the day and night, and it was on this much used path that runs along said northbound track that Lena W. Gunter was killed.

On the night of the accident Lena W. Gunter had walked along said northbound track in a northerly direction along said path, for several hundred yards. The track at that place is practically straight for half a mile, and lighted by the light of the street lamps near by. She was in perfectly plain view of the engineer, certainly for 500 yards and some

say for a much greater distance. She was returning from church in company with three sisters, Mrs. Jarrett, Mrs. Collins, Mrs. Hawkins, and a man named Will Ray. Mrs. Collins and Lena W. Gunter were on the said northbound track, having gotten on it at Stuart street, a short distance from the church they attended. They were holding hands and in a close conversation walking slowly down the path between the rails, and so continued until Lena was struck by the train. One witness said that now and then they "would punch one another and kind of shove one another, and it seemed that they were not paying any attention to the train."

There were five people in this party, who were close enough together to touch each other. Lena and her sister were walking between the rails, the other two sisters and Ray in the space between the two sets of double track. The train was running down grade, coasting, with the steam shut off, at the rate of fifty miles an hour and was making little or no noise. No one of the party at any time looked back, and the testimony of the surviving sisters is that no whistle was blown, bell rung, or any other sign of danger given; that the track was lighted on each side by city lights, and that there was no noise of any kind from the train until almost at the instant of impact, when they jumped and endeavored to clear the track. Mrs. Collins in this way escaped injury, but Lena, who was on the far side, failed to clear the track and was struck by the engine. None of the party knew anything of the approaching train up to this time. The engine-man discovered the parties on the track when 500 yards distant, and they were in full view of him on a straight track from that time until Lena was struck, and the fair inference is that he was looking at them the whole time but expected them to get off.

From the foregoing statement of facts it appears that the deceased was a licensee on the tracks; that no question

arises as to the duty to keep a lookout for her protection, as the engine-man saw her all the time; and that the only question involved is the application of the doctrine of "the last clear chance." This doctrine has been often invoked in the courts of this Commonwealth, and a large number of the prior cases are cited in the opinion of this court in *Ches. & Ohio Ry. Co.* v. *Corbin,* 110 Va. 700, 67 S. E. 179. Since that opinion was delivered there have been many other cases, involving the same doctrine, some of which, and a few prior ones, are cited in the foot note for convenience of reference.*

In selecting some of these for comment, we shall eliminate all that do not involve injury to persons on railroad tracks; those involving such injuries where it is manifest that the person injured was not in the possession of his faculties, like *Seaboard R. Co.* v. *Joyner,* 92 Va. 354, 23 S. E. 773, where a boy was killed while asleep on the track; those involving persons in a helpless condition, like *Washington & O. D. R. Co.* v. *Ward,* 119 Va. 334, 89 S. E. 140,

*\*Tyler, Rec'r* v. *Sites,* 88 Va. 470, 13 S. E. 978; *S. C.* 90 Va. 539, 19 S. E. 174; *Seaboard R. Co.* v. *Joyner,* 92 Va. 354, 23 S. E. 773; *Humphreys* v. *Valley R. Co.,* 100 Va. 749, 42 S. E. 882; *Richmond Traction Co.* v. *Martin,* 102 Va. 209, 45 S. E. 886; *Norfolk & W. Ry. Co.* v. *Carr.* 106 Va. 508, 56 S. E. 276; *Norfolk & W. R. Co.* v. *Dean,* 107 Va. 505, 59 S. E. 38; *Ches. & O. R. Co.* v. *Corbin,* 110 Va. 700, 67 S. E. 179; *Southern R. Co.* v. *Bailey,* 110 Va. 833, 67 S. E. 365, 27 L. R. A. (N. S.) 379; *Ches. & O. R. Co.* v. *Shipp,* 111 Va. 377, 69 S. E. 925; *Morton* v. *Southern R. Co.,* 112 Va. 398, 71 S. E. 561; *Roanoke Ry. & Elec. Co.* v. *Carroll,* 112 Va. 598, 72 S. E. 125; *Real Estate T. Co.* v. *Gwyn,* 113 Va. 342, 74 S. E. 208; *Southern Ry. Co.* v. *Baptist.* 114 Va. 723, 77 S. E. 477; *Ches. & O. Ry. Co.* v. *Kidd,* 116 Va. 822, 83 S. E. 933; *Ches. & O. Ry. Co.* v. *Saunders,* 116 Va. 826, 83 S. E. 374; *Ches. & O. Ry. Co.* v. *Newton,* 117 Va. 260, 85 S. E. 461; *Norfolk So. R. Co.* v. *Crocker,* 117 Va. 327, 84 S. E. 681; *Norfolk So. R. Co.* v. *White,* 117 Va. 342, 84 S. E. 646; *U. S. Spruce Co.* v. *Shumate,* 118 Va. 471, 87 S. E. 723; *Wash. & O. D. R. Co.* v. *Ward,* 119 Va. 334, 89 S. E. 140; *S. W. R. Co.* v. *Hill,* 119 Va. 841, 89 S. E. 895; *Va. Trust Co.* v. *Raymond,* 120 Va. 674, 91 S. E. 613; *Kabler* v. *Southern R. Co.,* 121 Va. 90. 92 S. E. 815; *Norfolk So. R. Co.* v. *Whitehead,* 121 Va. 139, 92 S. E. 916; *Wilson* v. *Portland R. Co.,* 122 Va. 160. 94 S. E. 347; *Derring* v. *Va. Ry. & P. Co.,* 122 Va. 517, 95 S. E. 405; *Penn. R. Co.* v. *Jenkins,* 123 Va. 211, 96 S. E. 170.

where a boy eight years of age was killed on a railroad bridge; and those where it is manifest the doctrine has no application, like *Derring* v. *Va. Ry. & P. Co.*, 122 Va. 517, 95 S. E. 405, where a person stepped on the track immediately in front of a rapidly approaching train in full view.

[2-4] The basis of recovery is the negligence of the defendant, that is, the breach of some duty imposed by law, common or statute. It is always incumbent on the plaintiff to establish this, as it will never be presumed, and in its absence there can be no recovery. After the defendant's negligence has been established, if it be shown that the plaintiff also was guilty of negligence which proximately contributed to his injury, there cannot, as a general rule, be any recovery, as the courts will not lend their aid to apportion the injury between two wrongdoers. But this rule is a harsh one, and at times works great hardship, so that the courts have felt compelled to qualify it, or make an exception to it, independently of cases specially provided for by statute, and to declare that, while the general rule would be enforced in cases where the negligence of both parties was concurrent and continuous down to the time of the injury, they would not enforce it, but would allow a recovery in that class of cases where, although the plaintiff had been negligent in the first instance and that negligence had proximately contributed to his injury, there was an appreciable interval of time between the plaintiff's negligence and his injury, during which the defendant by the exercise of ordinary care, could and ought to have avoided the effects of the plaintiff's prior negligence, but failed to do so. This is a just and humane qualification or exception, and is generally designated as the doctrine of the "last clear chance." It has been formulated in several recent cases in this court.

In the late case of *Norfolk So. R. Co.* v. *Smith*, 122 Va.

302, 94 S. E. 789, it is said that the doctrine of the last clear chance is nowhere better stated than in the syllabus to *Roanoke Ry. & Elec. Co.* v. *Carroll*, 112 Va. 598, 72 S. E. 125, as follows: "The underlying principle of the doctrine of the 'last clear chance,' as declared by the decisions of this court, is, that notwithstanding the contributory negligence of the plaintiff, there is something in his condition or situation at the time of the injury to admonish the defendant that he is not able to protect himself. The doctrine is one of prior and subsequent negligence, or of remote and proximate cause, and presupposes the intervention of an appreciable interval of time between the prior negligence of the plaintiff and the subsequent negligence of the defendant. Where the negligence of both continues down to the moment of the accident and contributes to the injury, the case is one of concurring negligence, and there can be no recovery." In *Real Estate, etc., Co.* v. *Gwyn*, 113 Va. 337, 345, 74 S. E. 208, 212, it is said that in order for the doctrine of the last clear chance to apply, "it must appear that, in contemplation of the entire situation, after the danger of the plaintiff became known to the defendant, or ought to have been discovered by him by the exercise of ordinary care, he negligently failed to do something which he had a clear chance to do to avoid the accident. But the doctrine can have no application to the case where the negligence of both plaintiff and defendant is simultaneous and concurrent."

The fullest discussion we have of the doctrine in any opinion of this court is found in the opinion of Keith, P., in *Southern Ry. Co.* v. *Bailey*, 110 Va. 833, 67 S. E. 365, 27 L. R. A. (N. S.) 379, which has been since frequently quoted. After considering a number of cases from this and other jurisdictions, and adverting to the general rule applicable to concurrent negligence, Keith, P., speaking for the whole court, says: "The general rule adverted to is subject,

however, to the qualification that where the negligence of the defendant is the proximate cause of the injury, and that of the plaintiff only the remote cause, the plaintiff may recover, notwithstanding his negligence; the doctrine in that respect being that the law regards the immediate or proximate cause which directly produces the injury, and not the remote cause which may have antecedently contributed to it. From that principle arises the well-established exception to the general rule, that if, after the defendant knew, or, in the exercise of ordinary care, ought to have known, of the negligence of the plaintiff, it could have avoided the accident, but failed to do so, the plaintiff can recover. In such case the subsequent negligence of the defendant, in failing to exercise ordinary care to avoid injuring the plaintiff, becomes the immediate or proximate and efficient cause of the accident, which intervenes between the accident and the more remote negligence of the plaintiff.

     *          *          *          *          *

"If it be the duty of a person upon the track of a railway to keep a constant lookout for approaching trains (and of this there can be no question), and if it be the duty of the servants of the company in control of the train to exercise reasonable care to discover the presence of a person upon the track, and if in the exercise of such reasonable care the presence of such person would be discovered, and the person on the track is injured and there be no other fact proved, then it is apparent that the case stated would be one of mutual and concurring negligence, and there can be no recovery. The duty was equal and each is equally guilty of its breach. If, however, it appears that those in control of a train, in the discharge of their admitted duty to keep a reasonable outlook, discover, or should have discovered, a person upon the track, and there be superadded any fact or circumstance brought home to their knowledge, sufficient to put a reasonable man upon his guard, that the person

upon the track pays no heed to his danger, and will take no step to secure his own safety, then the situation changes and the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery."

[5] In the case just quoted from and in others discussing the same subject, the right of the plaintiff to recover notwithstanding his own contributory negligence, is placed on the ground that "the defendant knows, or by the exercise of ordinary care, ought to know, of the paintiff's danger." It ought probably to be stated, in this connection, that the phrase, "or by the exercise of ordinary care, ought to know," is applicable only to that class of cases where the plaintiff is a person to whom the defendant owes the duty of lookout. If the plaintiff is a mere trespasser whom the defendant has no reason to expect to be on the track at that point, it is only after the discovery of his peril that the defendant owes him the duty to avoid injury to him by negligence, or intention. The failure to discover a trespasser of this kind is not actionable negligence. For a full citation of cases, see *Palmer* v. *Oregon Short Line R. Co.,* 34 Utah 466, 98 Pac. 689, 16 Ann. Cas. 229, where it is said that Nevada, North Carolina and Texas are the only States holding to the contrary.

[6, 7] Before proceeding to review the cases where the doctrine of the last clear chance has been applied to the relief of persons injured or killed on railroad tracks by passing trains, of the class to which this opinion is restricted, it may be observed that the plaintiff is always unconscious of his peril. But that is not sufficient to warrant recovery. In order to justify a recovery the situation must have been such that those operating the train, in the exercise of ordinary care and prudence, were admonished of the fact that the plaintiff was apparently unconscious of his peril, and

would take no steps to secure his own safety. In order to charge the defendant with liability, there must be, in addition to the presence of the person on the track, some other fact or circumstance, brought home to the knowledge of the defendant's servant operating the train, sufficient to put a reasonable man on his guard that the person on the track pays no heed to his peril, and will take no steps to insure his safety. *Southern Ry. Co. v. Bailey, supra.*

In *Ches. & O. Ry. Co. v. Corbin,* 110 Va. 700, 67 S. E. 179, Corbin, who was a licensee, was walking on the heads of the ties with his back to the approaching engine and train, when, without any signal to warn him of danger, he was struck by the engine and killed. The superadded facts upon which the court sustained a recovery are thus stated in the opinion: "Corbin was walking slowly along the ends of the cross ties with his back towards the approaching train, with an umbrella in his left hand, hoisted, and the handle resting across his shoulder, and with his dinner bucket in his right hand; that he was apparently wholly unconscious of danger." In the course of the opinion it is said: "In the present case the jury would have been warranted in drawing the inference from the evidence that the engineer had actual knowledge of Corbin's peril. But it is not necessary to rest the case upon inference. It is clear that Corbin was a licensee upon the premises of the railway company, to whom its servants owed the duty of keeping a reasonable lookout to avoid injuring him. If in the discharge of that duty the engineer could have discovered Corbin's presence on the track (under circumstances which would naturally have induced belief in a reasonable mind that he was unconscious of danger) in time either to have warned him of the approach of the train or to have stopped it and avoided the accident, and failed to do so, then the company would be liable."

In *Ches. & Ohio Ry. Co. v. Shipp,* 111 Va. 377, 69 S. E.

73

925, Shipp was a track walker of the defendant company, and was struck by a caboose and killed. At the time he was struck, he was stooping over, in a bending position, tightening bolts on a fishbar, with his back in the direction from which the caboose came. There was a brakeman in charge of the caboose, who could have stopped it within twenty feet. He had an unobstructed view of Shipp for 138 feet, but took no steps to stop it, and gave no warning of its approach, though the position of Shipp plainly disclosed the fact that he was totally unconscious of his peril. A judgment for the plaintiff was sustained.

In *Southern Ry. Co. v. Baptist*, 114 Va. 723, 77 S. E. 477, a judgment for the plaintiff was upheld. In that case Baptist went to the aid of a relative by trying to hold a frightened horse that was rearing and pitching toward a grade crossing of the railroad. An engine and train were then approaching the crossing at eight or ten miles an hour, and it was the noise and sight of them which frightened the horse, which was otherwise gentle. The plaintiff could not let loose the horse without serious danger of personal injury. The perilous position of the plaintiff was observed by the fireman on the engine when the engine was at least 144 feet away, and the train could have been stopped within fifty feet, but was not, and the plaintiff received the injuries complained of by being thrown violently against the train. Here the situation disclosed the peril of the plaintiff and even if it be conceded that he was guilty of negligence, the servants of the defendant had the last clear chance of avoiding its effects.

In *Norfolk So. R. Co. v. Crocker*, 117 Va. 327, 84 S. E. 681, the plaintiff was a passenger on a freight train, and when the train stopped at a station to do some shifting, he got off and was standing on the station platform smoking. The conductor of the train called him over to the siding to show him a defective drawhead on a car, which the conduc-

tor said had caused him several hours delay on the day before. While Crocker was between the rails inspecting the drawhead, the engine was being backed on the siding under the direction of the conductor, who was immediately at his side and knew his position. The conductor gave the signal for the coupling without paying any further attention to Crocker. The conductor knew of Crocker's position, and there was ample time to stop the engine or to call Crocker from his place of danger. Neither was done and the result was that Crocker was knocked down and his leg was crushed and broken. Crocker was allowed to recover, and it was said in the opinion that it was immaterial whether he was a trespasser or an invitee. The court based the right of recovery on the ground that, "The 'superadded fact or circumstance' in the present case, brought home to the knowledge of the conductor * * * was that the plaintiff, who was on the track at the conductor's invitation and in his immediate presence, was engaged in examining the car which the conductor had called him to see."

In *Kabler* v. *Southern Ry. Co.*, 121 Va. 90, 92 S. E. 815, the deceased was a licensee, and was killed while walking on the track. At the point of the accident the track was straight for several hundred yards, and there was nothing to prevent the engineman from seeing Kabler, nor Kabler from seeing the approaching train, if either had observed the duty of watchful vigilance. But the superadded fact or circumstance which induced the court to hold the company liable was that "It was a cold, blustering day, and Kabler, who was an old man, was walking slowly against the wind, which was blowing his clothing backward from his person as he proceeded on his way, leaning forward, the better to face the wind."

In *Wilson* v. *Va. Portland R. Co.*, 122 Va. 160, 94 S. E. 347, the court stood three to two in favor of the application of the doctrine of the last clear chance, but the judges sit-

ting in the present case are evenly divided as to the proper holding in that case. We do not, therefore, cite it as authority on the question.

In *Roaring Fork R. Co.* v. *Ledford, ante,* p. 97, 101 S. E. 141, the deceased was walking on the track facing an approaching engine which was backing with the tender in front, and was seen by the engineman four hundred yards ahead, but the engineman testified that he did not thereafter see him and "did not pay any attention to him." The bell on the engine was ringing at the time of the collision and had been ringing for some time previous thereto. But a sawmill near by was making a great deal of noise, and the deceased was walking slowly and had his head turned to one side, and was looking back over his shoulder until immediately before the collision and had been so looking for some time, attracted by work being done on a flat car on a temporary track next to the main line. It was obvious that he was unconscious of his peril, and this fact would have been observed by the engineman if he had been looking. The deceased was a licensee, and the company was held liable for the negligence of the engineman in failing to keep proper lookout. In the course of the opinion of Judge Sims, it is said: "Such duty of lookout along the track in front of a moving train or engine, extends, of course, and applies to a sufficient radius of distance ahead to enable the engineman to stop the train or engine by the exercise of reasonable care and diligence by the application of the brakes, or otherwise, should he observe such a person on the track in the position and condition aforesaid. It is manifest that it cannot be discharged by the engineman looking ahead a fourth of a mile away and his thereafter never looking again along the track in a given locality, and by the engineman contenting himself with supposing that any person whom he may have seen on the track a fourth of a mile away will get off the track before the engine

reaches him; for if this were true the last clear chance doctrine would be wholly abrogated in so far as it imposes the duty aforesaid of the keeping of a reasonable lookout."

This completes the review of the cases of the class we are considering in which the doctrine of the "last clear chance" has been applied to the relief of the injured party. On the other hand, there are great numbers of cases in which this court has refused to apply the doctrine, many of which are cited in the foot-note to an earlier portion of this opinion and in the opinion of the court in *Ches. & O. Ry. Co. v. Corbin, supra.* From these we select a few in which a "superadded fact or circumstance" was sought to be shown, or where it was thought by counsel that the evidence showed that the engineman should have observed the apparent unconsciousness of the person on the track of his peril.

In *Humphreys* v. *Valley R. Co.*, 100 Va. 749, 42 S. E. 822, relief was refused. The deceased was killed while walking on the track, with his back to the approaching train. The deceased was familiar with the surroundings, the day was clear, and the track was straight for 700 or 800 yards in the direction from which the train was coming. He stepped on the track, not far from a depot, without looking for the train, or taking any precaution for his own safety, some forty or fifty yards in front of the train which was running down grade at eight or ten miles an hour. Some of the witnesses for the plaintiff testified that "he was limping, walking all bent up, with his head down," that he seemed "to be bewildered," "it looked like something was wrong." Railroad hands, who were at the depot in front of the deceased, seeing his dangerous situation, waved their hands and shouted to him, and his wife screamed to attract his attention but all to no purpose. He was struck and given fatal injuries. Some of the

witnesses for the defendant testified that deceased walked diagonally to the railroad track as if he was going directly across the track to the door of a store in the depot, and had gotten but one foot on the track when he was struck with the engine, while the witnesses for the plaintiff stated that he walked on the ends of the ties a short distance, and then stepped over inside the track, and after taking five or six steps was struck by the engine. No warning was sounded by the engineman after deceased got on the track. The court, however, took the view that the deceased was a trespasser in entering upon the track where he did, to whom the duty of lookout was not owing, that there was no evidence that the alleged condition of the deceased, or the warning and shouting, were apparent to the engineman, and that those signals to the deceased were not given until the train was very close to him.

In *Southern Railway Co.* v. *Bailey, supra,* Bailey was standing on a concrete platform between the north and south bound tracks of the company at Orange station. He was looking at the northbound train of the Chesapeake and Ohio Railway Company, which had just arrived, when a Southern Railway train, southbound, ran into the station at about five or six miles an hour, and struck him, inflicting the injury complained of. From the point at which Bailey was struck there was a clear and unobstructed view to the north, from which direction the train came, of over 1,000 feet. The court held that Bailey was guilty of negligence in standing so near the track as to be struck and that this negligence continued up to the moment of the accident, and that even if the engineman saw his position, it was a case of mutual and concurring negligence and there could be no recovery.

In *Norton* v. *Southern Ry. Co.,* 112 Va. 398, 71 S. E. 561, the deceased undertook to cross the track at a public

crossing at a station. He stepped almost in front of the incoming train, and it was held that if there was any negligence on the part of the company it was concurrent with the negligence of the deceased in not looking and listening before going upon the track, and the court therefore refused to apply the doctrine of the last clear chance.

In *Chesapeake & Ohio Ry. Co.* v. *Kidd,* 116 Va. 822, 83 S. E. 933, recovery was denied, though the doctrine of the last clear chance was invoked. The facts of the case and the holding of the court thereon will appear from the following quotation from the opinion: "It appears that the plaintiff was an active, intelligent young man, twenty-four years of age, who lived at Eagle Mountain, and was thoroughly familiar with the tracks and the uses made of them at the station, and had often seen the "pickup train" by which he was injured come in and do its shifting there. The accident occurred in the daytime while the plaintiff was standing on the end of the ties or just inside the rail of one of the defendant's tracks, looking at the movements of trains and conversing with a passing acquaintance. While standing in this position, the 'pickup train,' moving east, ran upon him and inflicted the injuries complained of.

"In the view we take of this case, it is unnecesary to consider the question of the defendant's negligence in failing to exercise reasonable care to discover the presence of the plaintiff on the track, and thereby to avoid injuring him, for if such negligence be conceded, it will not entitle the plaintiff to recover.

"In reaching the point of the accident the plaintiff had walked between the tracks along the side of a westbound train, and when he stopped he selected a railroad track to stand upon, although there was about him ample space where he would have been safe. After taking his position on the track he did not look to the west, the direction from which the 'pickup' train came, although the track upon

·which he stood was practically straight, with a clear view to the west of more than thirteen hundred feet. If he had looked he would have been obliged to see the train approaching, whereupon a single step would have been sufficient to put him beyond the reach of harm. No fact or circumstance is brought home to the knowledge of those in charge of the defendant's train, sufficient to put a reasonable man upon notice that the plaintiff was paying no heed to his danger and would take no step to secure his own safety."

In *Chesapeake & Ohio Ry. Co.* v. *Saunders,* 116 Va. 826, 83 S. E. 374, two brothers, who were licensees, were walking along the track, one in front of the other, picking up coal, when an engine and train of cars came along. The brother nearest the train heard the train and stepped off, but the other brother, who was only eight feet in front of him failed to do so, and was killed. It is said that the deceased did not look or listen for the approach of the train when he got on the track, nor did he once turn his head and look in the direction from which the train was coming. The track in that direction was perfectly straight and the view unobstructed for over 800 feet. It is further said, in viewing the case from the standpoint of the demurrer to the evidence, it must be assumed that the employees of the defendant were guilty of negligence in failing to exercise reasonable care to discover the presence of the deceased on the track, but that there was nothing in the circumstances attending the situation to bring to the knowledge of the employees in charge of the train, that the deceased was paying no heed to his danger, and would take no steps to secure his safety, and it was said that "these facts present a plain case of mutual concurring negligence continuing up to the moment of the accident. The duty was clear and each was clearly guilty of its breach."

We have not deemed it necessary, in this connection, to refer to cases where the party injured or killed was of such tender years as not to be capable of negligence. See *Norfolk & Western Ry. Co.* v. *Carr,* 106 Va. 508, 56 S. E. 276; *Southern Ry. Co.* v. *Wiley,* 112 Va. 183, 70 S. E. 510.

[8] It has been held time and again by this court that it is the duty of railroad employees to keep a lookout for licensees, and when discovered to be in peril, to do all in their power, consistent with their duty to others, to avoid inflicting an injury upon them. The very fact that a person is a licensee charges the employees of the company with the duty to lookout for him, and the object of the lookout is to give warning of danger so as to avoid injury to him. As soon as a person steps on the track he is in a place of danger. The track itself is a physical proclamation of danger, and he is required, even at a public crossing, to look in both directions and to listen before entering upon it. The nearer a train approaches one upon the track, the greater the danger, and when it reaches that point where it is necessary for him to leave the track quickly to avoid a collission he is in peril, and if he still remains on the track and is killed, there is a calamity. It is the perilous condition of the licensee of which he is entitled to be *warned.* If, with the equipment at hand, this warning can be given, it must be, and the failure to give it is negligence. The question presented for our consideration in this case is, Was it a case of discovered peril? If it was, and the discovery was made in time to have avoided the calamity which followed, the company is liable.

[9, 10] The defendant demurred to the plaintiff's evidence, hence we must accept as true all the evidence for the plaintiff, and all inferences therefrom which a jury might fairly draw, and reject all of the defendant's evi-

74

dence in conflict therewith and all the inferences from the latter (although not in conflict with the plaintiff's evidence) which do not necessarily result therefrom. *Johnson* v. *Ches. & Ohio Ry. Co.*, 91 Va. 171, 21 S. E. 238. So viewing the evidence, we have, on the point at issue, the following case. The engineman was running a passenger train on down grade at the rate of fifty miles and hour. The steam was shut off, the train coasting and making very little noise. He first saw the deceased between the rails on the track when he was 500 yards away, and saw her continuously from that time until she was struck, and never at any time slackened his speed, blew his whistle, sounded his bell, or gave any other warning of the approach of his train, and neither she nor her companion either looked back or gave other evidence of consciousness of the approach of the train.

It may be conceded that the deceased, in failing to look and listen for the approaching train, was guilty of the grossest negligence conceivable. It may also be conceded that the engineman had the right to presume that she would leave the track in time for her own safety. But to what extent, and for what length of time did the engineman have the right to act on that presumption? Upon the facts stated, he was under no obligation to stop his train or to slacken its speed, but when the point of peril was reached, when it was manifest that she would be killed unless she left the track quickly, he owed her the duty of warning of the approaching train. The very situation was an admonition to him of her peril, and it then became his duty to do all in his power, consistent with his higher duty to others, to avoid injuring her. The warning, of course, should have been given in such time and manner as would have made it effective. A tap of the bell or a sound of the whistle, which could have been given in the twinkling of an eye, would have saved her. It would not have de-

layed traffic. It would not even have put anyone to inconvenience, and the warning should have been given. To require less than this is to underestimate the sacredness of human life and its value.

[11] It matters not how an engineman is admonished of the peril of a person on the track, if the admonition is such as that a reasonably prudent man would be put upon his guard that the person on the track is heedless of his danger and will take no steps to secure his own safety, it becomes the duty of the engineman to do all he reasonably can to avoid injuring him. This rule is sometimes applied where there has been a failure to obey signals, sometimes where no signals at all have been given.

In *James* v. *Iowa Central R. Co.*, 183 Iowa 231, 165 N. W. 999, 166 N. W. 1045, it was said that the assumption that an adult person will get off the track may not be carried beyond the point where a person of ordinary prudence would infer the contrary. In that case signals were given, the whistle blown and the bell rung, but the plaintiff paid no attention to them, and it seemed evident that she was not going to leave the track. The engineman could have stopped the train in time to have avoided a collision, but failed to do so, and the company was held liable. There was a similar holding in *Lake Erie R. C.* v. *Brafford*, 15 Ind. App. 655, 43 N. E. 882, 44 N. E. 551. It is hardly necessary, however, to cite further authorities, for the proposition is fully recognized in *Southern Ry. Co.* v. *Bailey, supra*.

In *Kelley* v. *Ohio Valley R. Co.*, 58 W. Va. 216, 52 S. E. 520, 2 L. R. A. (N. S.) 898, Kelley and his companion, who were trespassers, were walking on the railroad track and were struck by a fast train and killed. The track was straight for more than one-half a mile. and the trainmen saw them for a long distance before they were struck. and saw that they were making no effort to get off the track,

but gave no warning of the approaching train, and the single question presented was whether the trainmen, after discovering them on the track, were guilty of negligence in failing to sound an alarm at a proper distance before striking them. In the course of the opinion it is said: "Whatever be the duty of a railroad company's agent to keep a lookout to discover persons on the track, certain it is that when the trainmen have discovered a human being on the track, and in danger, they must give him warning of the train's approach, such a warning, by whistle or bell, at such a distance, before reaching the trespasser, that he will be able to hear, take a thought for his safety, and get off the track. Common humanity demands this. True he is a trespasser and in the wrong; but, though every man who uses the railroad track as a footway is committing a trespass, has placed himself within the precinct of danger where he has no right to be, and is guilty of gross negligence, yet people do walk upon railroad tracks, and the law, from sheer necessity has established the rule, applicable not only to railroads, but generally applicable, that it is the duty of one from whom the injury comes that he shall, when he sees a man in danger, use reasonable care, take reasonable steps, reasonable under the circumstances of the particular case, to save the man in danger. He cannot punish the trespasser for his wrong. It is a condition, not a theory. He cannot thus himself be guilty of a great wrong. He must help his perishing brother by doing what he reasonably can to warn and save him. These men were absentminded in conversation. Some become listless and abstracted in mind. They are entitled to warning. At any rate, so the law is. Under this principle it is the duty of a railroad company, it was the duty of the defendant in this case, to blow an alarm with its locomotive at a point far enough from Kelly to reach his ears, allowing him to realize his danger, and

take steps to save himself from the rushing deadly loco-
motive. *Raines* v. *Railroad,* 39 W. Va. 50, 19 S. E. 565,
24 L. R. A. 226; *Teel* v. *Railroad,* 49 W. Va. 85, 38 S. E.
518; *Ray* v. *C. & O. Ry. Co.,* 57 W. Va. 333, 50 S. E. 413;
3 Elliott on Railroads, sections 1253-1257. In that late
great work, Thompson's Commentaries on Negligence (Vol-
ume 1, sec. 238), we find this: "The courts are almost
universally agreed that, notwithstanding the fact that the
plaintiff or the person injured has been guilty of some
negligence in exposing his person or property to an injury
at the hands of the defendant, yet, if the defendant dis-
covered the exposed situation of the person or the property
in time, by the exercise of ordinary or reasonable care
after so discovering it, to have avoided injuring it, and
nevertheless failed to do so, the contributory negligence of
the plaintiff or of the person injured does not bar a re-
covery of damages from the defendant. The rule is aptly
illustrated by taking the case where a person negligently
walks upon a railroad track, and fails to keep out of the
way of a passing train. If the engineer, after noticing
his exposed situation, fails to stop his engine, or give the
proper signals, or otherwise act willfully and recklessly,
in consequence of which the person is killed or injured,
the company shall be liable to pay damages."

'These unfortunate men were on the railroad track, seen
by the engineer and fireman, as they themselves say, for
a very considerable distance before they were struck, in
open daylight. They say that, when the train struck the
straight track, they saw the men. They saw them before
blowing a crossing signal, at least 1,000 feet before the
men were struck. Furthermore, the engineer swore that,
after blowing the whistle, he saw that the men were mak-
ing no effort to get off the track. The facts fully establish
beyond dispute that the trainmen saw these men, and saw,
and had occasion to realize, plain reason to realize, that they

were in imminent danger, and did realize it. Everybody must know that an engineer who sees two men walking in front of his engine, flying at the rate of forty miles an hour, only a few feet away, sees that they are in imminent danger. True the engineer may assume that the trespasser will get off the track; but, when he sees for several hundred feet that he makes no effort to get off the track, it must inevitably arouse a reasonable apprehension that the man does not realize his danger, and that the case calls .for prompt alarm signals."

In *Louisville & N. R. Co.* v. *Tinkham's Adm'x*, 44 S. W. 439, 19 Ky. Law Rep. 1784, the facts and the holdings of the court are well expressed in the headnotes, which are fully sustained by the text of the opinion, as follows: "1. Where trainmen see a trespasser on the track in front of the train, it is their duty to give timely warning of the danger, and if necessary and practicable, to slacken speed and stop the train;" and, "2. Where the engineer saw a trespasser on the track 600 yards ahead of the engine and neither gave the usual signal nor made a single effort to stop the train until within 100 yards, the question of negligence was one for the jury." This case resembles the case at bar in that in the Kentucky case, as here, the train was running down grade at fifty miles an hour.

In *Ill. Central R. Co.* v. *Hooker*, 55 S. W. 488, 21 Ky. Law Rep. 1398, it was held that while the operatives of a train were not bound to stop a train upon discovery of a trespasser upon the track, they should warn him by sounding the whistle or ringing the bell.

In *Houston & T. R. Co.* v. *Harvin (Tex.)*, 54 S. W. 629, it was held that the employees of a railway company operating its engines are not authorized to presume. that the person seen on the track will leave it in time to avoid injury unless some warning is given.

In *Lake Shore, etc., R. Co.* v. *Bodemer*, 139 Ill. 596, 29 N. E. 692, 32 Am. St. Rep. 218, in discussing the general duty of persons operating railroad engines to trespassers, it is said: "It was the duty of the engineer to exercise ordinary care to avoid striking the deceased, even if he was a trespasser. If it was impossible to stop the train in time, it may yet have been possible to have warned the plaintiff of his danger in time to have enabled him to get out of the way. The engineer 'must use all the usual signals to warn a trespasser of danger.' 2. Shearman & Redfield on Negligence (4th ed.), sec. 483." In a further discussion of the facts in that particular case, and referring to the duty of the jury to weigh and consider the evidence with reference to the ability of the engineer to give timely signals, it is said: "If they believe from the evidence that the engineer saw the boy and thereafter waited until the sound of the whistle could do no good, when, by whistling as soon as the deceased came upon the track, he could have warned him in time to have enabled him to escape, they were justified in finding for the plaintiff." 139 Ill. 596, 29 N. E. 692, 32 Am. St. Rep. 218.

In *Humphreys* v. *Valley R. Co., supra,* it is said: "He (the engineman) was entitled to act upon this presumption until it became apparent to him, as a man, exercising ordinary prudence, that the deceased was about to get upon the track, or dangerously near it, or would keep on the track, without taking the precautions required of him for his own safety. This is conceded to be the general rule, with the qualification that 'if there is anything about the appearance of the person or other circumstances indicating to the engineman that such person is not conscious of his danger' the rule does not apply."

In *Norfolk & W. R. Co.* v. *Carr*, 106 Va. 508, 56 S. E. 276, in considering the sufficiency of the declaration, it was said that, "the negligence of the defendant company, which

was the breach of the duty alleged, is averred to be its failure to keep a proper lookout for persons on the tracks, or dangerously near thereto, and to give proper and reasonable warnings by signals, sounds, or otherwise, of the approach of the engine and cars upon its tracks to those whom the defendant knew, or by the exercise of ordinary care should have known, to be in a dangerous position. It is not necessary to recite here with more detail the averments of this declaration. It sets out with fullness and clearness every essential fact necessary to apprise the defendant company of the nature of the demand against it; and if the averments were admitted, there would be no difficulty in rendering judgment upon them for the plaintiff." The facts there declared to have been sufficiently alleged were in this case proved. It was further said, in the course of the opinion, that "the duty to keep a reasonable lookout at places constantly used, with the knowledge of the company, at all hours of the day by large numbers of men, women and children, is an established rule." The only object of the outlook was to give warning of danger to those likely to be found on the track. In the case at bar, the deceased was seen for five hundred yards, but no warning was given.

[12] In *Wash. & O. D. Ry. Co.* v. *Ward*, 119 Va. 324, 89 S. E. 140, the facts were very similar to those in the case last mentioned, in both of which a recovery was sustained. It was there held that the company was liable for an injury to a licensee, unless those in charge of the cars did all in their power, consistently with their own safety and the safety of those to whom they owed a higher duty to avoid the injury after they discovered the peril of the person injured, or might have discovered it by the exercise of ordinary care in keeping a proper lookout for such person, at the point where the injury was inflicted. The opinion also repeats the rule so often announced by this court, that railroad companies must use ordinary care to discover and

to *avoid injuring* licensees, and cites some of the previous cases on that subject. This view is emphasized in *Roaring Fork R. Co.* v. *Ledford, supra.* In the case at bar, it would seem that a statement of the facts as they appear in the demurrer to the evidence is all the answer needed to the inquiry, did the engineman use ordinary care to avoid injury to the deceased after he discovered her peril? The duty imposed upon the engineman was to use ordinary care to *discover* the peril of the licensee, and, having discovered it, to use like care to avoid injuring him. The omission of either duty is actionable negligence, and if the evidence leaves it doubtful whether or not he did use such care, then the question is one for the jury.

The cases in North Carolina seem to take a different view. In a number of them it is stated that the engineman has the right to assume that the person, seen walking on the track apparently in possession of his faculties, will leave the track for his own safety, and may act on this presumption, even up to the last moment when it is too late to save him. (*Treadwell* v. *Atlantic, etc., R. Co.,* 169 N. C. 694, 86 S. E. 617, and cases cited) ; and that he is not guilty of negligence in failing to give signals to the pedestrian (*Abernathy* v. *Southern R. Co.,* 164 N. C. 91, 80 S. E. 421; *Ward* v. *Railroad Co.,* 167 N. C. 148, 83 S. E. 326, L. R. A. 1918 E, 451).

The principle hereinbefore enunciated, that the situation itself may furnish sufficient admonition to the engineman, is not in conflict with the doctrine announced in *Southern Ry. Co.* v. *Bailey, supra,* where it is said: "If, however, it appears that those in control of a train, in the discharge of their admitted duty to keep a reasonable outlook, discover, or should have discovered, a person upon the track, and there be superadded any fact or circumstance brought home to their knowledge, sufficient to put a reasonable man upon his guard, that the person upon the track

75

pays no heed to his danger and will take no step to secure his own safety, then the situation changes and the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery."

[13] In the case at bar, there were two persons on the track, and three others so near their side that they could touch each other, none of whom evinced any consciousness of the approaching train. The train was running at the rate of nearly seventy-five feet per second and making no noise as witnesses for the plaintiff say. Surely some one of the five would have looked back or given some evidence of consciousness of the approaching train, if they heard it. The very attitude of the parties, the failure of five people to give any indication of consciousness of danger, and the manifest and increasing peril of the deceased were "superadded circumstances" brought home to the engineman's knowledge sufficient to put a reasonable man upon his guard that the deceased was totally ignorant of her peril and would take no steps to secure her safety. At least, the jury might have so found, and hence we must so hold.

It may be that the previous decisions of this court do not seem to be in entire harmony on this subject, but an examination of the cases in which recovery against the railroad company has been refused, although the engineman either failed to give a signal or to stop the train, will generally disclose some fact or circumstance differentiating it from other cases. Thus, the failure to give the signal was at a station where people are constantly on the track, but every one is on the lookout for incoming trains and no signal was deemed necessary (*Southern R. Co.* v. *Bailey, supra*) ; or the signal was given, but the peril was not discovered until it was too late to stop the train (*Norfolk & W. Ry. Co.* v. *Harman*, 83 Va. 553 8 S. E. 251) ; or the per-

son injured or killed was facing the approaching train that inflicted the injury (*Tyler, Rec'r* v. *Sites,* 90 Va. 539, 19 S. E. 174) ; or, although the person killed was facing the approaching train, it was obvious that he was unconscious of his peril (*Roaring Fork R. Co.* v. *Ledford, supra*) ; or signals were given by third persons, but unheeded, and the train could not be stopped (*Humphreys* v. *Valley R. Co., supra*) ; or there was some other reasonable excuse for the failure to make any effort to avoid injury to the person on the track.   The decisions have not always been placed on the grounds above indicated, and expressions have sometimes been used which were not necessary to the conclusion reached, but, as above stated, there has been generally some distinguishing fact or circumstance, and the court has exercised its best judgment on the facts and circumstances of each case as it was presented.

[14-16]  But whatever may have been the prior holdings, we are of opinion that when the engineman or other person in charge of a moving engine or car *sees* a person in apparent possession of his faculties on the track, or so near thereto that he will probably be injured or killed unless he changes his position, he has the right to assume that he will change his position in time for his own safety until the approach is so close that an engineman of ordinary care and prudence would be admonished of his peril, and if he then gives no evidence of consciousness of his peril it is the duty of such engineman or person in charge to give timely and suitable warning of the approach of such engine or car, and if the warning appears to be unheeded to use all other means within his power, consistent with his higher duty to other persons, to avoid injury to one who has thus exposed himself.   The failure to exercise this degree of care by a servant operating such engine or car is negligence for which the master is liable.   If the person on or dangerously near the track is one to whom the duty of lookout is owing,

and his injury or death results from a collision which would not have occurred if a proper lookout had been kept and warning given by the servant operating the engine or car, then the master is likewise liable. (*Roaring Fork R. Co. v. Ledford, supra.*) If a person is on the track and in an apparently helpless condition, mere warning is not sufficient because it would be useless, but the servants operating the engine or car must use all the means within their power, consistent with their higher duty to others, to avoid injuring him, after discovering his perilous position, or if he be one to whom the duty of lookout is owing, after they should have discovered it. *Seaboard R. Co. v. Joyner,* 92 Va. 354, 23 S. E. 773.

[17, 18] All of us are more or less negligent at times. That is to be expected. Hence we should, as far as practicable, relieve the negligent party of the effects of his negligence when it can be done consistently with a higher duty owing to others. This is especially true where that effect is death or serious bodily harm. This is simply applying the doctrine of the last clear chance. We do not, by any means, intend to intimate that persons walking on railroad tracks should be excused for inattention, for failure to keep a constant lookout in both directions for approaching trains, but if they have not done so and are discovered upon the track, and the engineman can by signal warn them of the approaching danger and thereby obviate the consequences of their negligence, it is his duty to do so. The law is thus stated in 2 Shear & Red. on Negligence, sec. 483 (4th ed.) : "The rule stated in section 99, that the plaintiff may recover, notwithstanding his contributory negligence, if the defendant, after becoming aware of the plaintiff's danger, failed to use ordinary care to avoid injuring him, has been enforced in many railroad cases. Thus a railroad engineer, after becoming aware of the presence of any person on the track, however unlawfully, or impru-

dently, is bound to use the same care to avoid injury to such person which he ought to use in favor of a person lawfully and properly upon the track. He must use all the proper signals to warn the trespasser of the danger, and he must also check the speed of his train, and even bring it to a full stop, if necessary, unless the circumstances are such as to give the engineer good reason to believe that the traveler sees or hears the train and will step off the track in ample time to avoid all danger, without any diminution of the speed of the train. Those rules apply to all cases, even of the most outrageous negligence on the part of the person on the track, as for example, to cases in which children or drunkards have fallen asleep lying across the rails. In general, an engineer would have the right to assume that a person walking upon the track was in possession of ordinary sight and hearing, and would therefore escape as quickly as any ordinary person; but when the conduct of the traveler is such as to excite a doubt of this, the engineer is bound to use greater caution, and to stop the train if necessary." In the case at bar, there was no need to stop the train nor to slacken its speed, but it was necessary to give a warning signal, and to give it at such time, place and manner as would have been effectual, if promptly heeded. Humanity demands this much. It was not done, and for that reason the demurrer to the evidence should have been overruled and judgment should have been entered on the verdict in favor of the plaintiff.

It is due to the engineman to say that he testified to giving at least two crossing signals within a comparatively short distance of where the deceased was struck, and that the bell on the engine was ringing at the time of the collision and had been ringing for a considerable distance before reaching that point—indeed, even from the time he came in sight of her. He is supported in these statements by his fireman and by several other witnesses who were called to testify on behalf of the defendant. But, upon the

defendant's demurrer to the evidence, this evidence could not be considered by the trial court, as it was in conflict with the testimony of the witnesses for the plaintiff.

For the reasons hereinbefore stated, the judgment of the circuit court must be reversed, and judgment will be entered in this court in favor of the plaintiff for $2,000, with interest, damages and costs, as provided by law.

*Reversed.*

SIMS, J., concurring in part and dissenting in part:

I concur in the result of the majority opinion, as I think there were sufficient "superadded" or abnormal circumstances present in the case to have warranted the jury in concluding, had there been no demurrer to evidence, that, at a time when the train was amply far enough away from the deceased for it to have been stopped, or slowed down, so as to have avoided the accident, by the exercise of reasonable effort to that end, it was either obvious to the engineman, or by the exercise of reasonable care by him in his lookout would have been obvious to him, that the deceased was wholly unconscious of her peril and would likely take no steps to escape from the approaching danger.

As to the duty to warn under the last clear chance doctrine: Where the statute on the subject of warning (section 1294-d of Pollard's Code) does not apply, I know of no legal principle which imposes the duty to warn a licensee on the track, except in case of the existence of such "superadded" or abnormal circumstances as aforesaid which are or should be observed, as aforesaid. It is true that the duty to warn may thus arise after it is too late to stop or so slow down the train as to avoid the accident, but I cannot see that that alters the legal principle involved. I think the holding of the majority opinion on the subject of the duty to warn introduces a new principle on the subject which can be created only by statute, and hence cannot concur in that portion of such opinion.