𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

NORFOLK SOUTHERN RAILROAD COMPANY V. WHITEHEAD.

June 14, 1917.

Absent, Burks, J.

1. CROSSINGS—*Contributory Negligence—Last Clear Chance.*—In an action for damages for injury to an automobile of plaintiff, by an express electric train of defendant, at a public road crossing, it appeared that when the train was about 1000 feet away from the crossing the motorman saw the plaintiff's automobile stop upon the track and could easily have stopped before reaching the crossing. There were superadded facts, plainly observable by the motorman, showing that the plaintiff was preoccupied and unconscious of his imminent peril.

   *Held:* That a verdict of the jury in favor of plaintiff must be sustained under the well-settled doctrine of the last clear chance.

2. APPEAL AND ERROR—*Instructions—Last Clear Chance—Harmless Error.*—In an action for injuries to an automobile by defendant's train at a public crossing, the court instructed the jury that if they believed from the evidence that the plaintiff was guilty of contributory negligence, yet if they believed that the "defendant company knew of the plaintiff's danger, or by the exercise of ordinary care should have known of plaintiff's danger in time to have stopped its train and avoided the accident, it was its duty to do so." It was objected to this instruction that it imposed an absolute and unqualified duty upon the defendant to stop its train, and that it should have been qualified by the insertion of the words "by the exercise of ordinary care," or words of similar import, after the words "avoided the accident."

   *Held:* That as a legal proposition this position is correct, and the instruction should have been qualified as suggested. But upon the facts of the case it plainly appeared that this error was not prejudicial to the defendant, since with the train about 1000 feet away from the crossing when the motorman saw the plaintiff's automobile stop upon the track, the jury must have found that by the exercise of ordinary care the defendant could have stopped its train in time to have avoided the accident.

3.  CROSSINGS—*Proximate Cause—Last Clear Chance.*—In an action
for injuries to plaintiff's automobile by the train of defendant
at a public crossing, where the doctrine of the last clear
chance was applicable, a number of other questions were
raised with respect to the negligence of defendant and the
contributory negligence of the plaintiff in certain particulars.
*Held:* That if both defendant and plaintiff were negligent in
such matters respectively, it was manifest that none of them
were the proximate cause of the injury, since the doctrine of
the last clear chance was applicable.

Error to a judgment of the Circuit Court of Princess
Anne county, in an action of trespass on the case.  Judg-
ment for plaintiff.  Defendant assigns error.

*Affirmed.*

STATEMENT OF THE CASE AND FACTS BY SIMS, J.

The plaintiff in error was the defendant in the court be-
low, hereinafter designated "defendant"; and the defend-
ant in error was plaintiff in the court below, hereinafter
designated "plaintiff."

This is a case of injury to an automobile of plaintiff by
an express electric train of defendant at a public road cross-
ing.

There was a trial by jury, a verdict for plaintiff in the
court below, which the latter refused to set aside and entered
judgment against defendant accordingly.  Of this judg-
ment the defendant complains, and assigns as error the ac-
tion of said court in granting and refusing certain instruc-
tions and refusing to set aside the verdict as contrary to
the law and the evidence.

Ascertaining the material facts, under the rule applica-
ble in this court in such case, bearing on the only question
we find it necessary for us to pass upon, they are as fol-
lows:

## THE FACTS.

The accident occurred in broad daylight at a station and public road crossing of defendant's railway in a small country village. The railway line runs east and west. The train which collided with the automobile was going east at a speed of about forty-five miles an hour as it approached the crossing until it was about 90 or 120 feet from it. The railway line was perfectly straight for several miles, west and east of the crossing, and the crossing and plaintiff's automobile, as it came upon and stopped on the railway track at the crossing, were plainly visible to the motorman of the train when the latter was 1000 feet or more away, if the train was that distance away at such time. Plaintiff, with his little girl beside him in his automobile, traveling along the public road from the north going in a southerly direction, approached very near the crossing, moving very slowly to avoid running up on a Mrs. Gimlett and her little boy, who were just ahead of him going in the same direction. Mrs. Gimlett was walking on one side of the road along a pathway, her little boy alternately darting out into the road and then back, which, after he had looked east along the railway line, engaged the plaintiff's attention until the instant he was about to go upon the railway track, when he looked west and saw the train coming. The manifest evidence of this preoccupation of the plaintiff and unconsciousness of his imminent peril was in plain view of the motorman on the approaching train. Mrs. Gimlett testified that at this instant she heard repeated blasts of the train whistle (the emergency signal as the jury were warranted in believing it) ; that she did not notice the train until then; that it was then west of or at Mr. Kelly's house—not nearer she thought—(Mr. Kelly's house was about 800 feet west of the crossing, 200 feet east of the whistle post, which was 1000 feet west of the crossing) ; that witness was then just crossing over the railway track,

her father (who was also with her) was coming behind her, between the rails of the track; that she looked back for her father and saw the plaintiff's automobile very close to her (his automobile had come to a standstill—engine stopped or gone dead—with the front wheels over the north rail of the track standing on the crossing, as plaintiff testified) and he "was changing" his child over. Taking up the narrative at the instant his automobile stopped, the plaintiff testified as follows:

"* * * and there I was * * * and the next thing I realized if he did not stop his car I was going to be struck, and I took the little girl from the right hand side and started to pass her on the left hand side, and I thought 'I will put her on the ground and tell her to run towards Mr. Burgess,' and then I thought that she might be bewildered and stand there, and I realized that when the car struck that was the way my car would be knocked, and I took her up and passed her back, and put her on the running board on the right hand side, and was in the act of putting my foot on the gear, so if she struck the car would be clear of her, and the way he was coming I seen he was bound to hit it, and I put my hand on the child and shoved her off the car, and the crash came, and the car went 180 feet after he struck me down the track."

In regard to the distance the train was away the instant he noticed it when his automobile went on the track, the plaintiff testified as follows:

"It is really hard for me to say how far the car was up the track when I first noticed it. I had to judge by this, and measured the distance of 500 feet to an object that was between me and the car, and the car was on the other side of that object, which was 500 feet when I first seen it, and I measured another object after I had stopped, and that was 390 feet, and the car was still on the other side of that when I stopped. How much, I could not say."

From Mr. Kelly's testimony the jury were warranted in finding that the emergency signal, of repeated sounding on the whistle, began when the train was west of his house, above the whistle post, or 1000 feet away from the crossing according to the plaintiff's testimony. It is true Mr. Kelly stated this distance as about 600 feet, but there being a conflict here, the plaintiff's statement on the subject must be taken by us to be the correct statement.

The material testimony for defendant, not in conflict with that for plaintiff, was as follows:

If the train had been going at a speed of 40 miles an hour it could have been stopped by the exercise of ordinary care to do so in 400 to 500 feet.

There were three signals blown by the whistle of the train; (1) one long whistle for the station, which was blown soon after they "left the woods," which was west of the whistle post, over 1000 feet from the crossing; (2) a crossing signal (what number of blasts of whistle not stated) which was blown about opposite the whistle post, or about 1000 feet away from the crossing, followed immediately, or almost immediately, by the emergency signal of repeated short blasts of the whistle.

The conductor of the train, a witness for the defendant, testified as to the sequence of signals and as to when the emergency brakes were put on, as follows:

"Well, my attention was attracted to the accident by the whistle blowing. The motorman blew the regular station blow, and then immediately after he blew the crossing blow I heard him blow several short whistles. That is the danger signal, precaution signal. I was sitting on the second or third seat from the rear of the coach, and I looked out, and when I looked out I saw the front wheels of the machine standing on the track, of the first rail from the left hand side."

Q. "Then what happened?"

A. "Well, the motorman reduced the speed of his car as soon as he began to give the danger signals, and the next thing happened the machine was struck."

The motorman of the train, a witness for the defendant, testifies that he saw the plaintiff when he came with his automobile "up on the track and stopped. * * * I seen him stop on the track and I tried to stop the train * * * I did everything I could to stop it * * * I threw the brakes in emergency as I usually do if I see anything on the track, and tried to make a quick stop."

The motorman, however, differs from other witness for defendant, as to when he put on the emergency brakes with reference to the sequence of events in respect to the giving of signals, and testified that he saw the plaintiff stop on the track before he blew the emergency signal. That when he saw him, (to use the motorman's own language) "I thought I could do more with the brakes than I could with the whistle," and first put on the brakes and then blew the emergency signal.

### Summary of the Facts.

The jury were therefore warranted in concluding from the evidence that the motorman saw the plaintiff's automobile stop on the track when the train was about 1000 feet away from the crossing, before the emergency whistle was blown, and that thereafter in the exercise of ordinary care he could have easily stopped the train before it reached the automobile on the crossing.

*Jas. G. Martin,* for the plaintiff in error.

*J. Edward Cole* and *Fred C. Abbott,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the opinion of the court.

As it appears from the foregoing statement of facts that the verdict of the jury must be sustained under the well-settled doctrine of the "last clear chance," it will be necessary for us to consider but one instruction of the court below, which bears upon the duty of the defendant with respect to stopping its train under the circumstances of this case—that is, instruction "E" which was as follows:

"The court instructs the jury that even though they may believe from the evidence that the plaintiff in this case was guilty of contributory negligence, yet if they further believe from the evidence that the defendant company knew of the plaintiff's danger or by the exercise of ordinary care should have known of the plaintiff's danger in time to have stopped its train and avoided the accident, it was its duty to do so, and if they believe from the evidence that the said defendant company failed to exercise this duty it is liable and your verdict should be for the plaintiff."

The objection urged to this instruction is that it imposes an absolute and unqualified duty upon the defendant to stop its train, and that it should have been qualified by the insertion of the words "by the exercise of ordinary care," or words of similar import, after the words "avoided the accident" in the instruction.

As a legal proposition this position is correct. The instruction as given should have been qualified as suggested, and not to do so was error. But upon the facts of the case as we must regard them to be, it plainly appears that this was error not prejudicial to the defendant, since with the train about 1000 feet away from the crossing when the motorman saw the plaintiff's automobile stop upon the track, the jury must have found that by the exercise of ordinary care the defendant could have stopped its train

in time to have avoided the accident. Hence, under the rule on the subject too well settled to need citation of authority, this was harmless error.

A number of questions are raised in the case with respect to whether the defendant was guilty of negligence in maintaining its crossing of the public road in proper condition; whether there was any evidence of an improper crossing to go to the jury; what was the degree of care required of defendant with regard to maintaining the crossing in proper condition; whether it was negligent in not sounding its whistle properly or sounding it too far away from the crossing; whether there was any evidence to go to the jury of the non-sounding of the whistle properly; whether the plaintiff was guilty of contributory negligence so as to bar his recovery in going upon the track without having looked and listened in such a manner as to make the looking and listening effective; whether in the instant case the latter should have stopped to make his looking and listening effective, etc.; but if both defendant and plaintiff were negligent in such matters, respectively, it is manifest that none of them in the instant case was the proximate cause of the injury. The doctrine of the last clear chance being applicable as aforesaid, what has been said above disposes of the case.

Therefore, for the reasons heretofore stated, we find no error in the judgment complained of and it will be affirmed.

*Affirmed.*