# Richmond.

## ADA W. ASHBY, ADMINISTRATRIX OF JANE ARNALL ASHBY, DECEASED, v. VIRGINIA RAILWAY AND POWER COMPANY.

### March 20, 1924.

### Absent, Burks, J.

1. STREET RAILROADS—*Last Clear Chance—Doctrine Inapplicable—Conscious of Danger—Case at Bar.*—In the instant case, the jury found, in effect, that defendant, through its motorman, did not have a last clear chance to avoid the accident, or lessen the injury. There was nothing in the evidence to prevent the jury from believing the testimony of the motorman and from concluding therefrom and from other evidence that the motorman, acting in good faith and with reasonable care, in his effort to ascertain whether plaintiff's intestate was conscious of her peril, and, in keeping the lookout which the law required, saw and could have seen nothing making it apparent that she was unconscious of her peril, until it was too late for him to avert the accident.

    *Held:* That the last clear chance doctrine was inapplicable.

2. LAST CLEAR CHANCE—*Statement of the Doctrine—Unconsciousness of Danger.*—Where preceding the accident the person subsequently injured is in a place of safety, the last clear chance doctrine does not apply in any case of railway accidents, unless and until there is something to suggest to the motorman, or other person in charge of the operation of the car or other instrumentality, that the person subsequently injured does not intend to remain in a place of safety until the car or other instrumentality passes—which *something* is sometimes referred to as a "super-added fact," and must be something abnormal in the attitude or situation of the person afterwards injured, making it apparent that he is unconscious of his peril, because of his attention being manifestly especially concentrated upon something else, or because of some other apparent interference with the normal result of the use of his five senses.

3. STREET RAILROADS—*Last Clear Chance—Consciousness of Danger—Case at Bar.*—In the instant case, an action for death of plaintiff's intestate from being struck by a street car of defendant, there was nothing in the evidence to make it apparent that plaintiff's intestate was

unconscious of her peril from the approaching car. On the contrary, there was evidence tending to show an affirmative manifestation on the part of plaintiff's intestate of consciousness of the approaching car—her pausing, hesitating, as if she were about to stop and let the car pass, just before the motorman for the first time thought that she would not stop.

*Held:* That the doctrine of last clear chance was not applicable in the instant case.

4. STREET RAILROADS—*Action for Death of Pedestrian—Conflicts in Testimony of Motorman—Conflicts in Evidence for the Jury—Case at Bar.*— In the instant case, an action for death of plaintiff's intestate from being struck by a street car of defendant, it was argued in behalf of the plaintiff that the motorman himself made certain statements in his testimony which, if true, rendered other statements relied on for the defendant untrue or unreliable. But such conflicts, like conflicts in the testimony of witnesses for the respective parties, or in that of different witnesses for the same party, were for the jury, and in the instant case the verdict concluded them all in favor of the defendant. It is within the province of the jury to sift the truth out of the whole evidence, however, or, wherever conflicting.

5. STREET RAILROADS—*Action for Death of Pedestrian—Doctrine of Res Ipsa Loquitur Held Inapplicable—Instruction as to Burden of Proof.*— In the instant case, an action for the death of plaintiff's intestate from being struck by a street car of defendant, the case not being a case of absence of explanation by the defendant and in which the accident was attributable to an unknown cause, but one in which the accident, if due to any cause for which the defendant was liable, was a known cause, namely, the negligence of the motorman in the operation of the street car, the doctrine of *res ipsa loquitur* was not applicable, and an instruction that told the jury that the burden of proving negligence was upon plaintiff was proper.

6. NEGLIGENCE—*Instructions—"To the Satisfaction of the Jury."*—In an action for death of plaintiff's intestate from being struck by a street car of defendant, the court instructed the jury that plaintiff must prove affirmatively by a preponderance of the evidence "and to the satisfaction of the jury" that the defendant was guilty of the negligence charged. The use of the language "and to the satisfaction of the jury" in such an instruction is not to be commended. The subject is fully dealt with in *Shiflett's Adm'x* v. *Va. Ry. & Power Co.,* 136 Va. 72, 116 S. E. 500, decided in 1923, subsequently to the trial of the instant case, and it is presumed that hereafter the trial courts of the State will not embody such a phrase in such an instruction; but the use of such language in such an instruction is not, of itself, reversible error.

7. STREET RAILROADS—*Negligence—Last Clear Chance—Instructions Read Together.*—In the instant case, an action for death of plaintiff's

intestate from being struck by a street car of defendant, an instruction was not erroneous, because, when read along with another instruction, given for the defendant, it did not allow a recovery although the jury might have believed from the evidence that the case fell within the doctrine of the last clear chance; because the instruction had to be read along with a third instruction, given by the court on its own motion, and that instruction so qualified the instruction in question as to allow recovery in such case. Moreover, the plaintiff's theory of the case, based on the doctrine of last clear chance, was distinctly and correctly submitted to the jury by still other instructions, and it was plain that the jury was not misled into ignoring this issue in the case.

8. Street Railroads—*Death of Pedestrian—Instructions.*—In an action for death of plaintiff's intestate from being struck by a street railway car, an instruction as to the right of a motorman of a street car to assume that pedestrians will take usual and ordinary precautions to avoid being struck, although somewhat argumentative, and not to be commended, was not misleading when read along with other instructions given, and was not in conflict with other instructions, but corollary thereto.

9. Street Railroads—*Duty of Pedestrian—Duty of Motorman—Lookout.*— The city ordinances of Richmond, providing that street railway motormen shall keep a vigilant watch for and give ample notice and warnings to pedestrians, imposes no higher duty on motormen than the law imposes upon pedestrians. Upon both alike the duty imposed in this particular is that of the exercise of ordinary care.

10. Appeal and Error—*Instructions—Invited Error.*—If in the instant case an instruction given for defendant did not correctly state the law, it was invited error, as another instruction given at the request of the plaintiff contained the same statement of the law, and therefore plaintiff could not be heard to complain.

11. Street Railroads—*Last Clear Chance—Instructions.*—In an action for death of plaintiff's intestate from being struck by a street car of defendant, the court instructed the jury that if they believed that plaintiff's intestate stepped upon the track immediately in front of the approaching street car when it was dangerously near, and that she was injured thereby, she was guilty of contributory negligence and could not recover in the cause. It was objected to this instruction that it did not except the case from its operation, if the jury believed that it fell within the doctrine of the last clear chance. By another instruction the court instructed the jury that whenever they were instructed that they might find for the defendant, should it be proved that the plaintiff was guilty of contributory negligence, these instructions were subject to the qualification of the last clear chance doctrine.

*Held:* That when the two instructions were read together the jury could not have been misled.

12.  STREET RAILROADS—*Action for Death of Pedestrian—Evidence of Motor-
      man.*—In the instant case, an action for death of plaintiff's intestate
      from being struck by a street railway car, evidence of the motorman
      to the effect that there was no reason why he should not have been
      running the car in a careful manner, and that if plaintiff's intestate
      had not taken the last step she took she would not have been struck,
      and that he did not reverse before he did because he thought she
      was going to stop, was held admissible.

13.  STREET RAILROADS—*Action for Death of Pedestrian—Evidence of Motor-
      man—Opinion Evidence.*—In the instant case, an action for death of
      plaintiff's intestate from being struck by a street railway car, the
      motorman testified that he could not run a street car in any other
      way than he did.

      *Held:*  That this was obviously improper testimony and should have
      been stricken out, but did not constitute reversible error.

14.  APPEAL AND ERROR—*Reversible Error.*—The Supreme Court of Ap-
      peals will not reverse any case unless it is made to affirmatively
      appear from the record that there has been harmful error; that is,
      error which the record shows, more probably than improbably,
      affected the verdict of the jury or the judgment of the court preju-
      dicially to the party complaining.

15.  ORDER OF PROOF—*Discretion of Court.*—The order in which witnesses
      are allowed to testify, and when they may be recalled and permitted
      to supplement their testimony by supplying statements omitted on
      their original examination, or by enlarging their original testimony,
      or going more into detail, are all matters so largely·in the discretion
      of the trial court that it is seldom its exercise will be interfered
      with by an appellate court, and then only when there has been a
      manifest abuse of the discretion, which appears to have been preju-
      dicial to the complaining party.

Error to a judgment of the Circuit Court of the city
of Richmond, in an action of trespass on the case.
Judgment for defendant.  Plaintiff assigns error.

*Affirmed.*

This is an action brought by the plaintiff in error
(hereinafter called plaintiff), to recover damages of the
defendant in error (hereinafter called defendant), for
the death of the plaintiff's intestate, alleged to have
been caused by the negligence of the defendant.

There was a verdict and judgment for the defendant, and the plaintiff assigns error.

The evidence is certified and not the facts. ·

There is much conflict in the testimony for the plaintiff and defendant, and some conflict in the testimony of the different witnesses for the defendant; and even in the very testimony of the same witness given at different times in the examination of the witness; which conflict, however, was settled in favor of the defendant by the verdict, and, in view of the verdict, the material facts must be stated as follows:

The case was tried under the general law and the following ordinances of the city of Richmond:

"4. Each motorman of a street railway car shall keep a vigilant watch for all teams, carriages or persons, especially children, and shall strike a bell or gong several times in quick succession on approaching within 100 feet of such team, carriage or person   *   *   *"

"8.   *   *   * It shall also be the duty of motormen of the cars to give ample notice to drivers of vehicles and pedestrians of their approach, and also to afford all reasonable opportunity for them or either of them to avoid collision or accident."

"15. No street car shall be moved or propelled upon or along any of the streets of the city at a greater rate of speed than four miles per hour, when turning a corner, nor at a greater rate of speed than twelve miles an hour at any other time."

About 5:30 P. M. of January 9, 1919, the plaintiff's intestate, Mrs. Ashby, was struck by one of the defendant's eastbound street cars on Main street, in the city of Richmond, causing injuries from which she died shortly thereafter. The accident occurred on Main street about thirty feet east of a point opposite the southeast corner of the pavement at the intersection of Main

and Harvey streets, just as Mrs. Ashby was about to enter, from the south, upon the southern or eastbound street railway track. She was about seventy-eight years of age at the time, but possessed of her senses of hearing and seeing practically unimpaired and she was normally intelligent, and active for one of her age.

Just before the accident, Mrs. Ashby had gone from her home, which was the second door from the northeast corner of Main and Harvey streets, to a store on the southeast corner of Main and Harvey streets, and, at the time of the accident, was returning to her home, going directly from the front of the store toward her home. As she walked from the sidewalk in front of the store toward the street car track, her head was covered with a white shawl, but her face was uncovered (whether her ears were uncovered or not does not appear in evidence), and she walked slowly, "a little diagonally to the east," but very slightly so, going almost at a right angle toward the street car track, with her head bent somewhat downward, but in the normal way of one walking, looking neither to her right nor left as she approached the track. The motorman of the eastbound street car, which afterwards struck her, saw Mrs. Ashby as she stepped from the sidewalk when the front end of the street car was about the center of Harvey street and the car was moving at the rate of about nine or ten miles an hour, and saw her all of the time thereafter until the instant before she was struck, by the corner of the fender on the front end of the car on its south side, before she actually got on the track. As Mrs. Ashby stepped from the sidewalk the motorman rang his gong loudly and continued to ring the gong until he took action in the effort to stop the car by the emergency method known as "reversing the car." She kept on walking, the street car was moving at the same

time at about the rate of speed above mentioned, perhaps somewhat slower. The motorman thought that she heard the gong and that she was going to stop before she came within any danger of being struck by the car. He saw nothing in her appearance indicating that she was going to attempt to cross the track in front of the car and would not stop as aforesaid, until she came within about twenty feet of the car. Just before that she apparently hesitated in her movement—paused—and two witnesses for the defendant, other than the motorman, testified that they saw this and that they thought that she was going to stop. And another witness for the defendant, other than the motorman, testified that he saw Mrs. Ashby from the time she stepped from the sidewalk until she was struck by the car, and had no idea that she was going to continue walking. And also another witness for the defendant, other than the motorman, testified, from his observation of Mrs. Ashby from just after she left the sidewalk until she was struck, that he supposed she was going to stop before she got on the track, that "there was nothing on her part" to indicate that she would not do so. When she did not stop before coming and had come within twenty feet of the car, as just stated, the motorman then, for the first time, felt that Mrs. Ashby was not going to stop. He thereupon promptly, and as quickly as he could, "reversed the car," but too late to prevent striking Mrs. Ashby. The car thereupon quickly slowed down, but struck Mrs. Ashby, as aforesaid, knocking her off from the car to the south, the rear end of the car being six to eight feet past where she lay when the car stopped.

In addition to certain instructions given at the request of the plaintiff and defendant, the court gave the following instructions at the request of the defendant:

Instruction No. 7.—"The court instructs the jury
that the mere fact that the plaintiff's intestate was in-
jured by contact with the street car of the defendant
company raises no presumption whatever that the de-
fendant and its employees in charge of the car were
negligent, but on the contrary, the presumption is that
the defendant and its employees were free from negli-
gence and that the street car was operated with ordi-
nary care, and the burden of proving any negligence on
the part of the defendant and its employees is on the
plaintiff, and the court instructs the jury that, in order
for the plaintiff to recover in this case the plaintiff must
prove affirmatively by a preponderance of the evidence,
and to the satisfaction of the jury, that the defendant
was guilty of negligence charged in the plaintiff's decla-
ration and that such negligence of the defendant was
the sole proximate cause of the injuries complained of,
and unless the plaintiff does establish said negligence
of the defendant by a preponderance of the evidence
and to the satisfaction of the jury, the jury must bring
in their verdict for the defendant.   And, furthermore,
even if the jury believe from the evidence that the de-
fendant and its employees in charge of the street car
were guilty of negligence, if they also believe from the
evidence that the plaintiff's intestate, Mrs. Ashby, was
guilty of any negligence which caused, or efficiently con-
tributed in any degree to any injury she may have re-
ceived, the jury must find their verdict for the de-
fendant."

Instruction No. 8.—"The court instructs the jury
that in order for an act to be the sole proximate cause
of an injury, it must be such an act as would naturally
and probably result in the injury complained of and it
must also be the only cause of such injury, that is, it
must alone, and without any contributing negligence or
contributing cause, result in the injury sued for."

Instruction No. 9.—"The court instructs the jury that the motorman of a street car has a right to assume, unless there is something in the manner or deportment of the person to cause him to believe the contrary, that a person approaching the street car tracks, or standing on or dangerously near thereto, when a car is approaching, will take all usual and ordinary precautions to avoid being struck by such car, and that such person will exercise his faculties of observation in order to avoid an accident. A peron walking in the street is not justified in stepping immediately in front of an approaching car, and ordinarily a motorman rests under no obligation to stop his car merely because he sees a pedestrian approaching the track—the pedestrian is in a place of safety, he has absolute control of his movements and can stop instantly, and it is reasonable to assume, especially between crossings, that the pedestrian will stop and not attempt to cross immediately in front of the car. It would be impossible to operate street cars in a city on any other theory. And if the jury believe from the evidence that Mrs. Ashby at the time she was injured negligently failed to exercise her faculties and thus caused or efficiently contributed to the accident in any degree, the jury must find their verdict for the defendant."

Instruction No. 10.—"The court instructs the jury that although Mrs. Ashby had the right to make free use of the streets, nevertheless, she was charged with knowledge of the fact that street cars ran along that street, and, furthermore, there was just as high an obligation and as great a duty resting upon Mrs. Ashby to look out for street cars and avoid placing herself in a place of danger as there was on the motorman of the street car to look out for her and avoid injuring her, and if the jury believe from the evidence that Mrs. Ashby

stepped upon the track immediately in front of the approaching street car when it was dangerously near and that she was injured thereby, she was guilty of contributory negligence and cannot recover in this case."

Instruction No. 11.—"The court instructs the jury that if they believe from the evidence that the defendant and the motorman of the street car in question were guilty of negligence as charged in the plaintiff's declaration, and that Mrs. Ashby was also guilty of negligence which caused, or efficiently contributed to the accident in any degree, the jury must find their verdict for the defendant even though they may believe from the evidence that the motorman on the street car was more negligent than Mrs. Ashby, since the law does not apportion negligence nor consider degree of negligence, the plaintiff not being entitled to recover in this case if Mrs. Ashby was guilty of negligence in any degree which proximately caused or efficiently contributed to the accident."

And the court of its own motion gave the following instruction:

Instruction No. 12.—"The court instructs the jury that wherever you are instructed that you may find for the defendant, should it be proven that the plaintiff was guilty of contributory negligence, these instructions are subject to this qualification: that even though you may believe from the evidence that the deceased was guilty of contributory negligence, yet this will not prevent the plaintiff from recovering in this case if the jury shall further believe from the evidence that the motorman in charge of the defendant's car saw, or by the exercise of reasonable care or caution in keeping a lookout could have seen, that the deceased was in a condition of obvious unconsciousness of the approach of the car and of her peril if she should continue her course across

the street, and that the deceased was in danger of being struck by the car should the car continue at the speed it was going and she continue on her course oblivious of the danger of being struck by the car, and that said motorman could have stopped the car by the use of ordinary care and caution in time to have prevented the car from striking her, but failed to do so, provided that you shall believe from the evidence that such was the case, then the jury should find for the plaintiff.''

Among the instructions given at the request of the plaintiff were the following:

Instruction No. 1.—''The court instructs the jury that on January 9, 1919, at the time of the accident complained of in the declaration in this case, there was in force in the city of Richmond, certain ordinances, relating to the operation of street cars upon the streets of the said city, which ordinances contain in part the following provisions: (quoting the aforesaid ordinances).

''And if the jury believe from the evidence in this case that the defendant company or its agents failed to comply with one or more of these provisions of the said ordinances, and that such failure to comply proximately caused the death of the plaintiff's intestate, as complained of in the declaration, while she was exercising ordinary care upon her part, then the jury should find for the plaintiff.''

Instruction No. 3.—''The court instructs the jury that the public has the same right to the use of the public streets as the street railway company has to use its tracks in such streets, and that pedestrians may walk across the street railway tracks in a public street as freely as upon any other part of such street so long as they do not obstruct the cars or carelessly expose themselves to danger, and this being so, it is the duty of the motorman operating the defendant's cars in the public

streets of Richmond to exercise ordinary care, to keep a vigilant lookout ahead for persons approaching near to or going across the tracks of the defendant company in a public street ahead of or in front of said street cars, and to sound the gong or bell on such car at such a distance as would give such a person crossing such track, or approaching near thereto, proper warning of the approach of the said car, and to run such car at such a rate of speed and to reduce the speed of such car to such a point as to enable the motorman to stop his car readily, and avoid a collision with or accident to a person so approaching or going to cross said street car track in front of or ahead of said street car, and if the jury believes from the evidence in this case that the injury and death of the plaintiff's intestate were proximately caused by the failure of the defendant company's motorman to do his duty in any of these matters, without contributory negligence on the part of the plaintiff's intestate, then they should find for the plaintiff.''

Instruction No. 4.—''The court further instructs the jury that the operator of a street car had no right to assume that no person will attempt to cross the street car track in a public street in view of or ahead of his car, and he must use ordinary care to attempt to check the speed of his car or stop the same as soon as he sees or ought to have seen that a person is about to go upon or across the track ahead of and in a dangerous proximity to his car; and if the jury believe from the evidence in this case that the motorman of the defendant company did not use ordinary care in attempting to check or stop his car when he saw, or by the exercise of ordinary care ought to have seen, that the plaintiff's intestate was about to go upon or across his track ahead and in dangerous proximity to his car, and that by such failure to use ordinary care in attempting to check or stop the

car the plaintiff's intestate, while exercising ordinary care on her part, was struck by defendant's street car and was injured so that she died as a result of said injury, the jury will find for the plaintiff."

Instruction No. 5.—"The court instructs the jury that the plaintiff's intestate is presumed to have exercised due and proper care at the time she was injured and that if the defendant sets up any contributory negligence as a defense, then the burden of proving that the plaintiff's intestate was negligent is upon the defendant, unless such negligence appears from the plaintiff's evidence, or may fairly be inferred from all the facts and circumstances of the case."

Instruction No. 6.—"The court instructs the jury that if they believe from the evidence in this case that while Mrs. Ashby was going from the south curb of Main street to the point where she was struck ·by the defendant's street car, that she had her head wrapped up in a shawl and that she did not look toward or in the direction of the street car, but was proceeding to cross the car track in front of the car in a condition of apparent unconsciousness of the approach of the car and of her danger, then it was the duty of the motorman in charge of said car to have used ordinary care to check the speed of said car, and to stop the same as quickly as possible as soon as he saw or by the exercise of ordinary care ought to have seen her going to and approaching his car track in such condition, and if they further believe from the evidence that the motorman failed to do so and that if he had not so failed he could have reduced the speed of said car or stopped his car in time to have avoided the collision, injury, and death of Mrs. Ashby, then they must find for the plaintiff."

The motorman was allowed, over the objection of the plaintiff, to testify, as appears from excerpts from his testimony, as follows:

"Q. Was there any reason why you should not have been running the car in a careful manner?

"A. No, sir.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. If she hadn't taken the last step she took, would she have been struck?

"A. No, sir; I don't think she would.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Now, why didn't you reverse it" (the car) "when you were on the west side of Harvey street, before you got in twenty feet of her?

"A. Because I thought she was going to stop.

"Q. Did you have any reason to think anything else?

"A. No, sir.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Every day that you ever run a street car, do you see people do just that very thing, come up to the car track,    \*    \*    and let the car go on by?

"A. I certainly do.

"Q. Could you run a street car in any other way than that?

"A. No, sir."

Heath, an expert witness for the defendant, testified in chief, on being first introduced as a witness in "sur-rebuttal," referring to the street car which struck Mrs. Ashby as of the "800 type," and stated, in substance, that it would take a motorman three seconds to reverse such a car and that after the reverse it would go some distance, how far depending upon the grade, condition of the track and speed it is moving when reversed. That to reverse such a car required three movements by the motorman—"cut off his controller, pull the reverse lever and feed his controller"—the last named movement having the effect of "feeding up the current." That with such a car at Main and Harvey streets, where

it is practically level, with the track in normal condi-
tion, and the car moving at a speed of nine to ten miles
an hour, coming east, for the motorman to stop the car
by reversing it within fifty-five feet would be "a good
stop." That the witness considered anywhere from
fifty-five to seventy feet "a good stop" under such con-
ditions. That moving at ten miles an hour the car
would go fifteen feet a second, forty-five feet in three
seconds and would go from eight to ten feet further
after the "reverse" took effect.

Thereafter Heath was recalled "in sur-rebuttal," be-
fore the plaintiff introduced any further testimony, as
appears from the record before the court on the appeal,
and over the objection of the plaintiff was allowed to
testify that the "800 type" street car was a "two-motor
car," and had been for about nine or ten years, and that
no effect is gotten from reversing any two-motor car
"without feeding up the current."

*Fulton & Wicker* and *W. K. Mathews*, for the plaintiff
in error.

*T. Justin Moore, A. G. Robertson* and *E. Randolph
Williams*, for the defendant in error.

Sims, P., after making the foregoing statement, de-
livered the following opinion of the court:

The questions presented for decision by the assign-
ments of error will be disposed of in their order, as
stated below.

[1] 1. Was the evidence sufficient to support the ver-
dict in finding, as it did in effect, that the defendant,
through its motorman, did not have a last clear chance
to avoid the accident, or lessen the injury, after it ought
to have been apparent to the motorman, had he exer-

cised reasonable care, that the plaintiff's intestate, Mrs. Ashby, was unconscious of the approach of the street car and that it was highly probably that she did not intend to stop and let the car pass, but intended to attempt to cross the track in front of it? That is to say, was the evidence sufficient to support the verdict in finding that the last clear chance doctrine was not applicable to the case?

The question must be answered in the affirmative.

The circumstances, as we must deduce them from the evidence after the verdict in favor of the defendant, are stated above.

As appears from the record and from the argument it is practically a *concession* in the case, on the part of the plaintiff, that the plaintiff was not entitled to recover, unless the last clear chance doctrine is applicable. It is, therefore, unnecessary to consider whether the defendant is chargeable with primary negligence, in view of our conclusion, just stated, that the jury were warranted in finding that the doctrine mentioned is not applicable. And certainly the jury were warranted in finding that the negligence of the plaintiff's intestate was such as to bar recovery, unless the right to recovery was saved to the plaintiff by the last clear chance doctrine. Upon the subject of the nonapplication of that doctrine the following only need be said:

[2, 3] The rules of law governing the subject and the authorities enunciating them have been so frequently and so recently reviewed by this court that no useful purpose would be served by again reviewing them in detail. See among such cases, *Nor.-So. R. Co.* v. *Whitehead,* 121 Va. 139, 92 S. E. 916; *Southern R. R. Co.* v. *Bailey,* 110 Va. 833, 67 S. E. 365, 27 L. R. A. (N. S.) 379; *Kabler's Adm'r* v. *Southern R. R. Co.,* 121 Va. 90, 92 S. E. 815; *Roaring Fork R. R. Co.* v. *Ledford's Adm'r,*

126 Va. 97, 101 S. E. 141, 871; *Gunter's Adm'r* v. *Southern R. R. Co.*, 126 Va. 565, 101 S. E. 885; *Director General* v. *Blue,* 134 Va. 366, 109 S. E. 482, 114 S. E. 557. It is sufficient here to say that it is settled, certainly in this jurisdiction, that when preceding the accident the person subsequently injured is in a place of safety the last clear chance doctrine does not apply in any case of railway accidents, unless and until there is something to suggest to the motorman, or other person in charge of the operation of the car or other instrumentality, that the person subsequently injured does not intend to remain in a place of safety until the car or other instrumentality passes, which *something* is sometimes referred to as a "super-added fact," and must be something abnormal in the attitude or situation of the person afterwards injured, making it apparent that he is unconscious of his peril, because of his attention being especially concentrated upon something else, or because of some other apparent interference with the normal result of the use of his five senses. There was nothing of that sort in the instant case. On the contrary there was evidence tending to show an affirmative manifestation on the part of Mrs. Ashby of consciousness of the approaching street car—her pausing—hestitating—as if she were about to stop and let the car pass, just before the motorman for the first time thought that she would not stop. And certainly there was nothing in the evidence to prevent the jury from believing the testimony of the motorman and from concluding therefrom and from other evidence that the motorman, acting in good faith and with reasonable care, in his effort to ascertain whether Mrs. Ashby was conscious of her peril and, in keeping the lookout which the law requires, saw and could have seen nothing making it apparent that she was unconscious of her

peril, until it was too late for him to avert the accident, or lessen the injury, by any action which it was then in his power to take.

[4] It is argued in behalf of the plaintiff that the motorman himself made certain statements in his testimony which, if true, rendered other statements relied on for the defendant untrue or unreliable. But such conflicts, like conflicts in the testimony of witnesses for the respective parties, or in that of different witnesses for the same party, were for the jury, and the verdict concludes them all in favor of the defendant. It is within the province of the jury to sift the truth out of the whole evidence, however, or wherever conflicting. And as the jury in the case in judgment found to be true the version of such testimony which is most favorable to the defendant, the court, as it is settled, must so find.

It is also argued for the plaintiff that the circumstance that Mrs. Ashby paid no apparent attention to the repeated sounding of the gong should have made the motorman realize that she was unconscious of the approaching street car, and *Director General* v. *Blue*, 134 Va. 366, 109 S. E. 482, 114 S. E. 557, is strongly relied on to support this position. But in the *Blue Case* the fact was that the injured plaintiff was walking more obliquely toward the railway track, with his back more toward the approaching train, then was the back of Mrs. Ashby towards the approaching car in the instant case, and the attention of Blue, as was apparent, was concentrated upon looking to the north—away from the train approaching from the south—to see if any train was coming from the north. Blue was not merely looking normally down directly in front of him as he walked, as was Mrs. Ashby; and there are other obviously pertinent circumstances to sustain the verdict for the de-

fendant in the instant case, that were absent in the *Blue Case.* •

And, too, in the other cases, relied on for the plaintiff, there were similar distinguishing features. In *Nor.-Sou. R. Co.* v. *Whitehead*, 121 Va. 139, 141, 92 S. E. 916, 917, as said in the statement of facts, there was "the manifest evidence of the preoccupation of the plaintiff and unconsciousness of his imminent peril was in plain view of the motorman of the approaching train"; In *Roaring Fork R. R. Co.* v. *Ledford's Adm'r*, 126 Va. 97, 101 S. E. 141, 871, the evidence showed that the plaintiff's intestate was not looking normally in front of him as he walked, but had his head continuously fixed in looking to one side, toward another operation, manifestly that his attention was especially concentrated thereon, and there was, besides, the noise of the mill which drowned the noise of the approaching train and interfered with the normal result of the use of his sense of hearing.  Of the other cases cited for the plaintiff, it is enough to say that the same principle was involved in the decision of all of them.

[5] 2. Was instruction No. 7, given for the defendant, reversibly erroneous?

The question must be answered in the negative.

This not being a case of absence of explanation by the defendant, and in which the accident was attributable to an unknown cause, but one in which the accident if due to any cause for which the defendant was liable, was a known cause, namely, the negligence of the motorman in the operation of the street car, the doctrine of *res ipsa loquitur* is not applicable; *Peters* v. *Lynchburg, etc., Co.*, 108 Va. 333, 61 S. E. 745, 22 L. R. A. (N. S.) 1188; 20 R. C. L., pp. 184-6; and, hence, the instruction was proper in that it told the jury what it did with respect to the burden of proof resting upon the plaintiff.

[6] The use of the language "and to the satisfaction of the jury" in such an instruction is not to be commended. The subject is fully dealt with in *Shiflett's Adm'x* v. *Va. Ry. & Power Co.*, 136 Va. 72, 116 S. E. 500, decided in 1923, subsequently to the trial of the instant case, and it is presumed that hereafter the trial courts of the State will not embody such a phrase in such an instruction, but, as held in the *Shiflett Case*, we do not consider the use of such language in such an instruction, of itself, reversible error.

[7] The instruction was not erroneous, because, when read along with instruction No. 8, given for the defendant, it did not allow a recovery although the jury might have believed from the evidence that the case fell within the doctrine of the last clear chance; for the reason that the instruction had also to be read along with instruction No. 12, given by the court on its own motion, and that instruction so qualified instruction No. 7 as to allow recovery in such case. Instruction No. 12 correctly states the doctrine of the last clear chance as applicable to the evidence. *Va. Trust Co.* v. *Raymond*, 120 Va. 674, 91 S. E. 613. Moreover, the plaintiff's theory of the case, based on this doctrine, was distinctly and correctly submitted to the jury by instructions Nos. 4 and 6, and it is plain that the jury were not misled into ignoring this issue in the case.

[8] 3. Was instruction No. 9, given for the defendant, erroneous?

The question must be answered in the negative.

We do not consider this instruction as in conflict with instructions Nos. 1 and 4 given for the plaintiff, as argued for the plaintiff, but as being corollary thereto. *Va. Ry. & Power Co.* v. *Meyer*, 117 Va. 409, 84 S. E. 742; *Roanoke Ry. Co.* v. *Carroll*, 112 Va. 598, 72 S. E. 125; *Gunter's Adm'r* v. *Southern R. R. Co.*, *supra* (126 Va. 565, 101 S. E. 895).

It is true that the instruction is somewhat argumentative, and is not to be commended in that feature of it, but it seems clear that it was not misleading to the jury when read along with the other instructions given.

[9-11] 4. Was instruction No. 10, given for the defendant, erroneous?

The question must be answered in the negative.

We think that, in the particular of the duty to keep a vigilant lookout ahead, the ordinances of the city imposed no higher duty upon the motorman than the law imposed upon Mrs. Ashby. Upon both alike the duty imposed in this particular was that of the exercise of ordinary care. But if this were not a correct statement of the law it is so stated in instruction No. 3, given at the request of the plaintiff; so that if it were error (which we hold it were not) it would be invited error; of which the plaintiff would not be heard to complain. *Forbes* v. *So. Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15, *Big Sandy, etc., R. Co.* v. *Ball*, 133 Va. 431, 113 S. E. 722.

With respect to the failure of the instruction to except the case from its operation if the jury believed from the evidence that it fell within the doctrine of the last clear chance, instruction No. 12 took care of that feature, as above noted in connection with the consideration of instruction No. 7 given for the plaintiff. It is true that instruction 12, in terms, modifies the instructions given for the defendant only "wherever you" (the jury) "are instructed that you" (the jury) "may find for the defendant, should it be proven that the plaintiff was guilty of contributory negligence"; and instruction No. 10 does not use the precise terms that the jury are instructed that they may "find for the defendant"; but it, in substance and plain meaning, in-

structs the jury that, if it be proven that the plaintiff was guilty of contributory negligence, the plaintiff "cannot recover in this case;" which is the same thing, differently stated; and it is manifest that it is most improbable that the jury mistook such meaning.

What is just said also disposes of the only objection made to instruction No. 11, given for the defendant.

[12] 5. Did the trial court commit reversible error in permitting to be introduced and remain in evidence certain testimony of the motorman, set forth in the statement preceding this opinion, on the subject of why he acted as he did in the emergency immediately preceding the accident?

The question must be answered in the negative.

[13, 14] All of this testimony was obviously properly admitted in evidence, except the following question and answer: "Q. Could you run a street car in any other way? A. No, sir." This was obviously improper testimony and should have been stricken out. But plainly this is too insignificant a matter to constitute reversible error. We doubt if there was ever a perfect trial of any case. And, as we have repeatedly held in sustaining the decision of trial courts in civil cases, we will not reverse any case unless it is made to affirmatively appear from the record that there has been harmful error—that is, error which the record shows, more probably than improbably, affected the verdict of the jury or the judgment of the court prejudicially to the party complaining thereof. Finally:

[15] 6. Did the trial court err in permitting to be introduced and remain in evidence the testimony of the expert witness Heath, upon his being recalled as a witness in sur-rebuttal, set forth in the statement preceding this opinion?

This question, also, must be answered in the negative.

The only ground on which the correctness of the action of the court here in question is assailed is that, between the previous testimony of Heath on the same subject and his being recalled, the defendant had rested and the plaintiff had introduced the testimony of expert witnesses on the subject, and that Heath was permitted to be recalled to contradict such testimony for the plaintiff by supplementing the testimony he had already given. The record before us does not sustain this ground. According to the record, the plaintiff was the first to introduce testimony on the subject mentioned; then followed the testimony of Heath and other expert witnesses for the defendant, in sur-rebuttal, and the testimony of Heath, on being recalled, still "in sur-rebuttal," was introduced before any further testimony was introduced for the plaintiff; and, thereafter, an expert witness for the plaintiff was recalled, who further testified in rebuttal of the "sur-rebuttal" testimony for the defendant on the subject.

Further: The order in which witnesses are allowed to testify, and when they may be recalled and permitted to supplement their testimony by supplying statements omitted on their original examination, or by enlarging their original testimony, or going more into detail, are all matters so largely in the discretion of the trial court that it is seldom its exercise will be interfered with by an appellate court, and then only when there has been a manifest abuse of the discretion which appears to have been prejudicial to the complaining party.

The case must be affirmed.

*Affirmed.*